## HUDSON v BOARD OF EDUCATION

Ohio Appeals, 4th Dist, Scioto Co

Decided July 22, 1931

Messrs. Blair and Ball, Portsmouth, for plaintiff.

Messrs. Cameron Meacham, prosecuting attorney, and William J. Mayer, Portsmouth, for defendants.

MAUCK, PJ.

Of course, the powers of the board of education are solely derived from the statutes. Curious and unexplained differences are found in the statutes relating to various sorts of public contracts. Municipal corporations contracting under §2348 GC may award the contract on the basis of the lowest and best bid, and, have such discretion in determining the best bid that in such a case as we here have could unques-

tionably determine that the combined bid of Robinson was a better bid than the two separate bids of Robinson and Lallow. Similar provisions are found in §2319 and §2320 GC for the construction of state buildings. When it comes to county buildings §2355 requires an award of the contract to the lowest bidder, and it is equally clear under that statute that the award must be made to the lowest bidder regardless of whether the awarding authority considers it the best bid or not. It was under such statute that the Supreme Court determined the case of **State v. Commissioners, 39 Oh St 188,** upon which the plaintiff relies. That authority is not helpful, however, for the board of education makes contracts under §7623 requiring the contract to be let not to the lowest bidder, as in the case of counties, nor to the lowest and best bidder, as in the case of municipal corporations, but to the lowest responsible bidder. Certain paragraphs of §7623 **read as follows:**

"5. When both labor and materials are embraced in the work bid for, the board may require that each be separately stated in the bid, with the price thereof, or may require that the bids be submitted without such separation.

6. None but the lowest responsible bid shall be accepted. The board in its discretion may reject all the bids, or accept any bid for both labor and material for such improvement or repair, which is the lowest in the aggregate.

7. The contract must be between the board of education and the bidder. The board shall pay the contract price for the work when it is completed in cash, and may pay monthly assessments as the work progresses.

8. When two or more bids are equal, in the whole, or any part thereof, and are lower than any others, either may be accepted, but in no case shall the work be divided between such bidders."

Now this language gives some color to the contention of the board that it may combine two jobs and award the contract to the lowest bidder in the aggregate. The history of the statute, however, does not justify that construction. The language had its origin in 70 O. L. 211, and in the original act it is apparent that the term "lowest in the aggregate" refers to the aggregate of labor and material and not to the aggregate of two separate contracts.

We are of the view that inasmuch as the statute requires that the lowest responsible bid shall be accepted there is meant thereby the lowest responsible bids whether seg-

regated or aggregated, and that in the instant case the board of education had no power to award the contract to Robinson for both jobs unless it had the power to reject the Lallow bid for the gymnasium auditorium job. **Perkins v. Bright, 109 Oh St 14,** Locher v. Haserot, 23 C. C. (n.s.) 553.

While the Perkins case authoritatively determined that under §7623 a board of education has less discretion in rejecting the lowest bid than municipal authorities have in rejecting the lowest bid under §2348, the Supreme Court in that case was not called upon to decide just how much less discretion the board of education has nor just what factors may enter into its determination of what is "the lowest responsible bid." For the determination of this question we therefore turn to authorities elsewhere. The general rule is that laid down in 19 R. C. L. 1070 as follows:

"When a statute requires municipal contracts to be awarded to the 'lowest responsible bidder' it does not compel the municipality to award a contract to the lowest bidder who is financially responsible or who is able to produce responsible sureties. What the public desires is a well constructed work, and a lawsuit against even a responsible defendant is a poor substitute. Such a statute, it is held, invests the municipal authorities with a discretionary power to pass upon the honesty, skill and competency of the respective bidders and the courts will not interfere with the exercise of this discretion. The determination of who is the lowest responsible bidder for a municipal contract does not, however, rest in the exercise of an arbitrary unlimited discretion of the officer or board awarding the contract, but upon the exercise of a bona fide judgment, based upon facts tending reasonably to support such determination."

It is not necessary to recapitulate the authorities cited in support of the text. It is sufficient to say that those authorities amply support the quotation. It may be observed that State ex rel v. Board of Commissioners, 105 Neb. 570, 181 N. W. 530, cited by the plaintiff for another purpose, is in clear harmony with the authorities referred to, and from that opinion we quote what we deem to be the prevailing rule:

"The term 'responsible' is not, however, limited to pecuniary ability, as may have been intimated in the New York case just cited, but pertains to many other characteristics of the bidder, such as his general

ability and capacity to carry on the work, his equipment and facilities, his promptness, and **the quality of work previously done by him,** his suitability to the particular task, and such other qualities as are found necessary to consider in order to determine whether or not, if awarded the contract, he could perform it strictly in accordance with its terms."

The language underscored is particularly apt to the case at bar.

In the instant case the evidence shows that Lallow, the lowest bidder on the gymnasium auditorium job, was in the school elections opposed to the members of the defendant board. This should have made it a delicate matter for the board to reject Lallow's bid, and this fact tends to complicate what would otherwise be a reasonably clear state of facts. While it would be an outrage to deny a contract to Lallow because he was politically opposed to the members of the board of education, it would be equally wrong to use that fact to secure for him a more favorable consideration than a stranger would have. When the board came to consider the Lallow bid it had heard that some of his equipment was under levy by the sheriff. It made inquiry in regard to this, and in our judgment Lallow's explanation was sufficient to have satisfied the board of education that such levy did not affect Lallow's responsibility. The board further, however, knew that Lallow had been a partner in the construction of another building for the board of education of this same district and that Lallow was active in superintending that construction. It claimed to know that the roof of that building leaked, and it had reason to believe that this leak was owing to the base on which the roof rested and that Lallow was responsible for that defective base. It claimed to know that the plastering on the building was in places loose, owing either to improper material or improper workmanship. It claimed to know that a walk constructed by Lallow at this same school building was broken and cracked after a very short service. There was much substance to all these claims.

It is true that no attempt has ever been made by the board to assert against Lallow or any one else any claim for damages for the alleged defects in the original work, but it does not follow that the board is required to again expose itself to a situation where it must have a law suit to obtain what it is entitled to without a law suit. It is also true that if awarded the contract now in controversy Lallow would give ade-

quate security for the performance of the contract, but it does not follow that the board must contract with one whose work may reasonably require resort to a surety or even compulsion against the principal. It is to be noted that it is not within our province to determine how fully Lallow performed his earlier contracts. We only determine that there is evidence of what seem to be such faults in the work that the board of education was called upon to exercise its judgment in relation thereto, and that in doing so it can not be said to have abused its discretion. These various factors were substantial matters for the board to consider in determining Lallow's responsibility before it awarded another contract to him. Certainly if Lallow had been a stranger to the board it would not be argued that the board abused its discretion in taking these facts into consideration in determining the responsibility of his bid. The fact that he was not on friendly terms with the board ought not operate to his advantage any more than it should to his disadvantage.

In this connection the plaintiff raises a novel question. He says that the board of education can not ex parte determine that the lowest bidder is not the lowest responsible bidder without giving such bidder a hearing and with a finding of facts covering his irresponsibility. This view is sustained by Kelly v. Board of Freeholders, 101 Atl. 422. This is a New Jersey case, and like holdings may be found in a number of reported cases in that state. The New Jersey cases are peculiar in this: In that state local boards in awarding public contracts act in a quasi judicial capacity and their action is reviewed by certiorari in the courts. Of course, no such system prevails in this state. Here the action of the administrative board in which discretion is vested is set aside only by collateral attack by way of injunction, as in the instant case. In that state, the action of the contracting board being quasi judicial, its action is reviewable in a direct proceeding, and the disappointed contractor must have had his day in court before the tribunal awarding the contract in order that he may have an effective review on certiorari in the courts. Clearly the New Jersey rule has no application to Ohio.

Another case upon which the plaintiff relies is Hibbs v. Arensberg, a Pennsylvania case reported in 119 Atl. 727. In that case the contracting board ignored three lower bids and awarded the contract to the fourth lowest. The record shows that the board had given no consideration to any facts tending to show any irresponsibility on the

part of any of the three lower bids and had only considered the responsibility of the fourth lowest bid. This the court held was an abuse of discretion. That case follows the general rule in Pennsylvania and elsewhere saving only the state of New Jersey, set forth in the quotation above.

Another question that has been argued is that Lallow's bid was not entitled to consideration because it was submitted in violation of paragraph 9 of §7623 GC providing that where there is reason to believe that there is collusion or combination among bidders the bids of those concerned shall be rejected. While there was an appearance of an understanding between Lallow and another in the making of the bids, we are of the opinion that there was no unlawful collusion between them and doubt that the Lallow bid could have been rejected on that ground. In view of our holding on the power of the board to reject the Lallow bid on the ground already discussed it is unnecessary for us to more fully express ourselves on the construction of the statute last referred to.

Decree for defendant.

MIDDLETON and BLOSSER, JJ, concur.