## Drass et al. v. Cassandra Borough School District

*Clarence E. Davis*, for plaintiffs.
*Howard W. Stull*, for defendant.

GRIFFITH, J., December 27, 1944.—This is a bill in equity brought by a building contractor for an injunction to restrain a school district from proceeding with a contract for the remodeling of a two-story building for school purposes, entered into between the school district and the Wilson Construction Company on or about December 31, 1943. The bill also sought to declare void such contract and to require the school directors to execute a contract with plaintiffs.

The bill averred that defendant caused notices to be published asking for competitive bids for remodeling a certain two-story store building so that it might be used for school purposes, and providing that said bids should be submitted on or before December 22, 1943; that as a result of said notice plaintiffs submitted their bid in the sum of $14,700, but that, notwithstanding the fact that plaintiffs were the lowest bidders, the school

district entered into a contract with the Wilson Construction Company, whose bid was $15,300 and, therefore, not the lowest bid by a responsible bidder. A preliminary injunction was granted on March 1, 1944, and on March 4, 1944, after hearing, was dissolved.

Defendant filed preliminary objections to the bill, averring, inter alia, that plaintiffs have a full, complete, and adequate remedy at law; that plaintiffs are guilty of laches, and that an injunction should not be granted in that there is no allegation of fraud, collusion, or abuse of discretion on the part of the school board.

Testimony was taken from which it appears that the school district was not in good financial condition and, as a matter of fact, had no funds with which to presently pay the contractor for the construction work, except that it hoped to receive approximately five thousand dollars from the State, leaving a balance of approximately eight or nine thousand dollars unpaid. John L. Elder, the engineer for the school district, was instructed by the school board at the time the bids were opened to communicate with plaintiffs and advise them that they could have the contract at their low bid provided they would take notes for approximately eight or nine thousand dollars. This plaintiffs refused to do, unless the notes were personally guaranteed by the members of the school board, and one of the plaintiffs told Mr. Elder that they would withdraw their bid if they had to take the school district's unguaranteed notes for part payment. The school directors were unwilling to personally guarantee the school district's notes, and authorized the county superintendent of schools, Dr. Arthur M. Stull, to communicate with the Wilson Construction Company, the next lowest bidder. The Wilson Construction Company was satisfied to take the unguaranteed notes of the school district for part payment and, therefore, on or about December 31, 1943, a contract was entered into with the latter. Subsequently, the State made an appropriation in the sum

of $14,000 to the Cassandra Borough School District, as a result of which it appeared that notes need not be given. However, there is no question but that this action on the part of the State was totally unexpected and the school district, at the time it entered into the contract with the Wilson Construction Company, would have been unable to arrange for the doing of the work required except upon a credit basis, which plaintiffs were unwilling to extend.

Under all the circumstances, we can see nothing improper in the action taken by the school board, especially in view of the fact that the priority for materials which they had obtained would expire on December 31, 1943, and an emergency, therefore, was in existence.

There is no charge in the bill of complaint that the school board acted fraudulently, with improper motives or in an abuse of their discretion. As was said by the Supreme Court in Hibbs et al. v. Arensberg et al., 276 Pa. 24, 27:

"A certain flexibility in the power of officials to take care of these matters is intended to be granted, that the law relating to public letting may not become an instrument of oppression through a too rigid construction. These officers must act honestly, reasonably and intelligently, and a new departure must not so vary from the original plan or be of such importance as to constitute a new undertaking, which the act controls, and where fairness could only be reached through competitive bidding. Courts, however, will be slow to interfere unless it appears the officers are not acting in good faith. . . .

"The term 'lowest responsible bidder' does not mean the lowest bidder in dollars; nor does it mean the board may capriciously select a higher bidder regardless of responsibility or cost. What the law requires is the exercise of a sound discretion by the directors; . . ."

In the case of Wells et al. v. The School District of the City of Chester et al., 7 Del. Co. 578, a contract for

the erection of a school building was awarded to "the lowest local bidder". As a matter of fact, this bid was some five hundred dollars in excess of the lowest bidder, but the school directors testified that they knew of the work done by this contractor and, therefore, had confidence in his skill and integrity, and that it was better for the school district to give the contract to him for a slightly advanced price rather than to a stranger. There was, therefore, no doubt as to the question of good faith. The court said (p. 580):

"As neither fraud, corruption or improper motives have been shown, and as a School Board is not required to award a contract to the lowest bidder who is able pecuniarily to carry out his contract, but may take into consideration the judgment and skill of the different bidders, and as this discretion will not be supervised by a Court of Equity unless it is clearly shown that it has acted from some improper motives, I am not sure that the defendants could not have successfully rested here.

"They chose, however, to call the members of the School Board to explain their reasons for awarding the contract to Mr. Provost."

In the present case, defendant raised the same question by preliminary objections to the bill, and since no fraud, corruption, improper motives, nor abuse of discretion is averred in the bill, we are of the opinion that it does not set forth a good cause of action and, therefore, must be dismissed. We, therefore, enter the following

### Decree

And now, December 27, 1944, after argument and due consideration, defendant's preliminary objections are sustained and the bill is dismissed at the cost of plaintiffs.