## Heyl et ux. et al. v. Lower Merion Township School District et al.

*Roland Fleer* and *M. Carton Dittmann, Jr.,* for plaintiffs.

*High, Swartz, Flynn & Roberts,* for defendants.

KNIGHT, P. J., August 17, 1951.—Did the Board of School Directors of the Lower Merion School District abuse its discretion in awarding a' contract for the building of a tennis court in the Wild Garden area of the H. H. Arnold Athletic Field?

Did the board of school directors violate the Public School Code of 1949 by rejecting the bid of F. C. Feise Company and returning the deposit accompanying the bid?

Did the board of school directors violate section 772 of the Public School Code of 1949 in authorizing the construction of a tennis court in the Wild Garden area?

### Findings of Fact

I. Plaintiffs are residents of the township of Lower Merion and taxpayers in the School District of Lower Merion Township.

II. Plaintiffs own homes which are adjacent or abut on the General H. H. Arnold playing field owned and maintained by the School District of Lower Merion Township.

III. Defendant School District of Lower Merion Township is a school district of the second class. Defendant R. H. Johnson Company is a corporation engaged in the contracting business. Individual defendants are duly elected or appointed school directors of the School District of Lower Merion Township.

IV. The General H. H. Arnold Athletic Field is an open space containing approximately 18 acres of land on which is erected a stadium and on which are maintained playing fields for football, baseball, hockey, track and other sports.

V. The athletic field is maintained in connection with the Lower Merion High School, with 1,338 pupils, and the junior high school, with 589 pupils.

There are no tennis courts on the athletic field although the township maintains 25 public courts in various playgrounds and recreation centers throughout the township. The township has a population in excess of 50,000.

VI. Along the western boundary line of the athletic field is a strip of land somewhat lower in grade than the rest of the field. This strip contains approximately two acres of land. It is designated as the Wild Garden and is planted with various ornamental bushes and shrubs being used as a propagating area for the school district. In this Wild Garden there are also a number of large trees, oaks, maples and other hard woods.

VII. In January of 1950 the school board through its athletic committee and its committee on grounds and buildings considered the building of tennis courts on the H. H. Arnold Field. Plans and specifications were prepared and bids were asked for the construction of six tennis courts on the site of those now in controversy. The bids were opened at a meeting of the board on April 17, 1950, and all bids were rejected. In the budget for 1951-1952, the sum of $38,000 was appropriated for the building of tennis courts.

VIII. The site for the six tennis courts was selected as the best available after considering two other locations in the field and after inspection by committees of the board and after considering the advice of Mr. Morris, who is in charge of the buildings and grounds of the school district and the maintenance thereof.

IX. In May of 1951 the school board again advertised for bids for the construction of six tennis courts located in the southwestern corner of the athletic field. Five of these courts were contiguous, that is, built adjoining each other. The sixth court was located on a lower level, roughly in the rear or to the west of the five courts. The sixth court is separate and apart from the other five but near them.

X. The proposal for bids called for two estimates, A and B. Estimate A was for the five courts. Estimate B for the six courts.

XI. At a properly called special meeting of the school board called for "general purposes" held on June 4, 1951, three bids for the construction of the tennis courts were received and opened. Paul J. Mirabile bid $26,674 for estimate A and $36,547 for estimate B. F. C. Feise Company bid $25,410.10 for estimate A and $6,540 for estimate B. R. H. Johnson Company bid $19,699 for estimate A and $26,711 for estimate B.

XII. The school board, deeming that the estimate of F. C. Feise Company for B was an obvious mistake, added that bid to the Feise estimate for A and found that the total exceeded the bid of R. H. Johnson Company. Accordingly a motion was made, seconded and carried that the contract be awarded to R. H. Johnson Company at the quoted price of $26,711. Eight members of the board were present and all voted "aye." The votes of the individual members were recorded in the minutes. The contract with the R. H. Johnson Company was executed, necessary bonds were furnished and at the time of the hearing the rough grading had been done on the five contiguous courts.

XIII. The sixth court (see finding 9), if constructed, will be located in the Wild Garden area (see finding 6). No work has been done on this court, except employes of the school district have removed all bushes

and shrubs worth saving that would be otherwise destroyed in the construction of the court.

XIV. The construction of the sixth tennis court in the area of the Wild Garden will require the removal of 12 trees: Seven oaks, one alder, one red maple, one American thorn and two ash. These trees vary in diameter from 31 inches to 4 inches and in age from 25 to 75 years.

XV. When some of plaintiffs learned of the proposed destruction of the trees they called upon Dr. Zimmerman, a member of the school board, who told plaintiff, Mrs. Heyl, that he did not know how many trees were involved. On July 3, 1951, plaintiffs, Mrs. Heyl and Mrs. Ross, met with Mr. Scott, president of the school board, Mrs. Cuff and Mrs. Jeffers, members of the board and Mr. Morris, the superintendent of grounds and buildings of the school district, but nothing has been done by the board up to the time of hearing.

XVI. The six tennis courts are needed by the Lower Merion School District for the use of students in the senior and junior high schools.

### Discussion

Plaintiffs do not object to the construction of the five tennis courts but they do object to the construction of the sixth court in the Wild Garden area. The gravamen of their complaint is the destruction of trees made necessary in constructing the sixth court.

They contend that the destruction of these trees is contrary to the spirit, if not the letter, of the Public School Code, that the contract for the construction of the six courts was awarded to the second lowest bidder without investigating the reliability of the lowest bidder; for these reasons they contend that the contract awarded to the Johnson Company is illegal. They also contend that the directors awarded the contract without knowing that it would involve the destruction of

trees and in so doing without investigation they abused the discretionary power granted them by the law.

We will consider these contentions in their reverse order.

Those who seek to set aside an action of a board of school directors on the ground of an abuse of discretion carry a very heavy burden. This is the doctrine of all of our cases.

In exercising their discretion, school directors may have acted unwisely or indiscreetly but unless it is apparent that their decision is not an honest and sincere exercise of judgment but was influenced by some corrupt motive or personal interest, or it is obvious that it is not discretion that is being exercised but arbitrary will or caprice the courts will not interfere by injunction: Wilson et ux. v. Philadelphia School District et al., 328 Pa. 225, 239; Day et al. v. Amwell Township School District, 283 Pa. 248-49; In re Hatfield Township Independent School District 1 Montg. 77; Wickerham v. Directors of Carroll Township School District 17 Wash. 1.

We have been unable to find any case which involved the location of a tennis court or other athletic facility, but it is well established that equity will not interfere by injunction with the selection of a site for a school building unless exercised with fraudulent intent (Kingsley v. Stimson, 202 Pa. 421) and a host of other cases.

Plaintiffs do not charge that the decision to build the sixth court was influenced by any corrupt motive or personal interest on the part of the directors or any of them, but they contend the decision was made without investigation and without knowledge that the construction of the sixth court would require the destruction of trees.

"Executive officers are clothed with the responsibility of originating and executing plans for the pub-

lic good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after investigation": Hibbs et al. v. Arensberg et al., 276 Pa. 24-26.

To overcome this presumption plaintiffs offered evidence to show that three of the directors expressed surprise when told after the Johnson contract had been awarded that the construction of the sixth court would entail the destruction of so many trees. We are of the opinion that this is not enough.

In a big and important school district such as Lower Merion, the board of school directors as a whole must lean heavily upon the reports of its committees and upon the advice of its technical employes.

The evidence shows that the committee on grounds and the athletic committee of the board inspected the three sites proposed for the tennis courts and shown on a plan prepared by Mr. Morris, the superintendent of grounds and buildings, who accompanied the committees when they inspected the three sites.

After this inspection the site selected was approved by the board. Mr. Morris recommended this site.

Shortly after the board awarded the contract to the Johnson Company, some of plaintiffs complained to some of the directors and several of the board met with some of plaintiffs on the land. Despite this and the publicity the case has received, no action has been taken by the board to rescind or modify its contract with the Johnson Company. This would seem to be a silent reaffirmance of the action in awarding the contract. After reviewing the evidence and briefs of counsel we can find no abuse of discretion on the part of the board. F. C. Feise Company submitted two bids —one for estimate A for *five* courts for $25,410.10, the other for estimate B for *six* courts for $6,540. It was so obvious that this was a mistake and that estimate B was intended by Feise Company to cover only

the cost of the sixth court that the board added the two together and this made Johnson Company the low bidder. Plaintiffs now contend that the board should have accepted the Feise Company bid under estimate B, held that company to its mistaken bid and if the Feise Company refused to go forward with the contract, forfeit the $1,597.50 which the company had deposited with its bid. For the board to have taken advantage of a situation such as this would have been morally wrong, totally unjustified, and rightfully condemned by all fair-minded people. We are sure the citizens of Lower Merion Township would never approve of such conduct by their elected representatives on the school board.

We are strongly of the opinion that the action of the board in rejecting the bid of F. C. Feise Company and returning its deposit was ethically correct and legally sound.

Plaintiffs further contend that the board violated section 772 of the Public School Code of March 10, 1949, P. L. 30, which provides as follows:

"The Board of School Directors in each school district shall put the grounds about every school building in a neat, proper and sanitary condition and so maintain the same and shall provide and maintain a proper number of shade trees."

It will be noted that the section applies to school buildings and not athletic fields. It is often impossible to construct an athletic field without the destruction of trees.

The Wild Garden area contains about two acres. The proposed sixth court will occupy .16 acre of this area. Assuming that this figure represents .16 of the whole area of approximately two acres and not .16 of an acre, still we see that only about one sixth of the Wild Garden area is taken. It was for the board to

say how many shade trees constituted a proper number to be maintained in the Wild Garden area and we cannot say that the taking of one sixth of the area to devote to other purposes was an abuse of discretion.

When southeastern Pennsylvania changed from a predominantly agriculture community to a predominantly industrial community forward looking men and women saw that if the health and stamina of our people were to be maintained some substitute would have to be found for the healthy out-of-door life of the farm boy and girl. They turned to the schools and the schools began to pay more and more attention to athletics and physical education. Outdoor games require space, playing fields need room. The tennis courts on Arnold Field are needed and while we may deplore the destruction of some trees in constructing them, the building of men and women is more important.

There has been no violation of section 772 of the Public School Code, supra, by the School Board of Lower Merion Township.

### Conclusions of Law

I. The School Board of Lower Merion Township is not guilty of an abuse of discretion in awarding the contract to the Johnson Company for the construction of the six tennis courts in the area selected by the board.

II. The school board did not violate the Public School Code of 1949 by rejecting the bid of F. C. Feise Company and returning the deposit accompanying the bid.

III. In constructing the sixth court, which requires the destruction of trees, the school board did not violate section 772 of the Public School Code or abuse its discretion.

IV. The bill should be dismissed.

V. Plaintiffs should pay the cost.

*Decree*

And now, August 17, 1951, it is ordered and decreed that these findings of fact and conclusions of law shall be marked filed to become part of the record of the case and the prothonotary shall enter the following:

*Decree Nisi*

The bill is dismissed, plaintiffs to pay the costs.

The prothonotary is further directed to give counsel notice of the filing of this decree and if no exceptions are filed within 10 days, the above decree shall become the final judgment of the court.