# Parker, Appellant, v. Philadelphia.

*Municipalities—Contract—Awarding    contracts—Specifications—Patented articles.*

The director of public works of a city is not required, when publishing specifications for a municipal contract, to decide finally on every item, but he may ask for alternative bids on two articles to be furnished, if he has set up a common standard as to them in the specifications and drawings, and has prescribed a method of bidding which gives an equal opportunity to each bidder.

Where the thing to be furnished can be manufactured by anyone in precise conformity to certain and specific requirements or purchased in an open market at a standard price, there is no valid reason for asking for alternative bids; but where the thing is protected by a patent or cannot be bought in an open market and any one of a number of particular kinds fully complies with the established standard, the interest of a municipality will be best served by asking for bids for any or all.

MESTREZAT, J., dissents.

Argued Jan. 9, 1908. Appeal, No. 336, Jan. T., 1907, by plaintiff, from decree of C. P. No. 2, Phila. Co., June T., 1907, No. 5,830, refusing preliminary injunction in case of Thomas Parker v. City of Philadelphia, John E. Reyburn, Mayor of said city, George R. Stearns, Director of the Department of Public Works of said City, and Millard Construction Company, a corporation of the state of Pennsylvania. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before SULZBERGER, P. J. The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree refusing preliminary injunction.

*Owen J. Roberts* and *E. O. Michener*, for appellant.—It is settled law that no contract can be let except upon competitive bidding; and for bidding to be competitive there must be a common standard by which to measure the respective bids: Mazet v. Pittsburg, 137 Pa. 548; Ryan v. Ashbridge et al., 10 Pa. Dist. Rep. 153; Louchheim v. Phila., 218 Pa. 100.

*John C. Bell* and *Ernest Lowengrund,* assistant city solicitor, with them *A. W. Crawford, Saml. K. Louchheim* and *J. Howard Gendell,* city solicitor, for appellee, cited : American Pavement Co. v. Wagner, 139 Pa. 623 ; Schuck v. Reading, 186 Pa. 248 ; McCallin's App., 1 Monaghan, 596 ; Interstate Vitrified Brick & Paving Co. v. Phila., 164 Pa. 477 ; Trapp v. City of Newport, 115 Ky. 840 (74 S. W. Repr. 1109).

Opinion by Mr. Justice Fell, March 2, 1908 :

This appeal is from an order refusing a preliminary injunction to restrain the mayor and the director of public works of Philadelphia from executing a contract with the Millard Construction Company for public work. The finding by the court, which rests upon undisputed testimony and the admission of counsel at the hearing that there was no evidence of fraud or collusion and that the director acted in good faith in awarding the contract to the Millard company as the lowest bidder, left but one question for determination. This question, as stated by the learned judge of the common pleas, was " whether the award was illegal by reason of illegality in the specifications."

The contract was for a large amount of work and material for the construction of preliminary filters and involved an aggregate expenditure of more than $1,150,000. Seventy-eight items were included in the specifications. Two of these items, it was alleged in the bill, were defective in that they furnished no common standard by which to estimate the bids. One of these, No. 59, related to controllers to measure the output from the filters, and the other, No. 63, to gauges to register the height of water in the filter and in the under-drains. The requirements of the city as to controllers, including the materials used in their construction, their capacity, and the size of inlet and outlet connections, were set out in detail in the specifications with the statement : " The plans show a closed pressure type of controller, but the Director reserves the right to select the type and make that he considers best adapted to the work." In the form of proposal to be filled up and signed by the bidder there were under item No. 59 three blanks to be filled in with the names of the kind or kinds of controller offered. Each bidder was at liberty to bid for one

kind or for as many different kinds as he wished.   There were six types of controllers in use.   None of these was excluded by the requirements of the specifications.   Similar blanks permitted bids for gauges " as per contract drawing " and for furnishing and settling gauges of a kind to be stated by the bidder.   All controllers and gauges in use were protected by letters patent and the manufacture of them was in an experimental stage.   The object of asking for bids in this manner was to secure competition and to enable the director to select from the number offered the most suitable in price and quality. There was no complaint by any bidder or by anyone desiring to bid that he misunderstood or was misled or embarrassed by the form of bid adopted.

The inquiry is then narrowed to this : Was the director required, when publishing his specifications, to decide finally on every item, or could he ask for alternative bids on two articles to be furnished, having set up a common standard as to them in the specifications and drawings and having prescribed a method of bidding which gave an equal opportunity to each bidder ?   The objections urged to the course pursued by the director are that it made favoritism in awarding the contract possible and that it prevented competition.   Neither objection seems to be well founded.   In regard to the first it may be said that no plan has yet been or is likely to be devised that will prevent all abuse in awarding municipal contracts and the mere possibility of favoritism is not a valid reason for pronouncing a plan per se illegal.   As to the second objection, where, as in this case, the articles to be furnished are protected by patents and a uniform standard is established and any one of several patented appliances meets the requirements of the specifications, the asking for bids for any or all of them would certainly tend to secure rather than to prevent competition. Where the thing to be furnished can be manufactured by anyone in precise conformity to certain and specific requirements or purchased in an open market at a standard price, there is no valid reason for asking for alternative bids ; but where the thing is protected by a patent or cannot be bought in an open market and anyone of a number of particular kinds fully complies with the established standard, the interest of a municipality will be best served by asking for bids for any or all.

The field is equally open to each bidder and the power of a monopoly in the thing is broken.  The general custom of long standing has been to require bidders in certain classes of public work to furnish samples of the articles they proposed to furnish, in order that the quality of the sample may be taken into consideration in awarding the contract, thus bringing into competition both the price and the quality of the thing to be furnished.  The legality of this custom has not been questioned.  That in effect was what was done here.

In Attorney General v. City of Detroit, 26 Mich. 263, it was held that under an act requiring contracts to be let to the lowest responsible bidder, alternative bids might be requested and the decision as to the final choice made after the bids had been opened, especially in cases where the thing to be furnished was controlled by patents.  It was said in the opinion of Cooley, J.: " Now if the purpose of the charter is to secure competition on work or supplies for the public, something is necessarily left to the discretion of the council ; and they must determine in each case what competition the nature of the case permits of, and what is the best method to secure it.  If they invite proposals for a particular thing or process, they necessarily in so doing exclude everything else which might have been a substitute for the thing called for. . . .  It would be worse than idle for the law to mark out, or for the council to follow, any one unvarying course in these cases.  The same course, which, under some circumstances, would be manifestly proper and most for the public good, under others would be so manifestly detrimental and place the public so completely at the mercy of interested parties, that it could not be adopted by a body having any liberty of choice without justly subjecting themselves to the charge of corruption.  It must, therefore, be manifest that any inflexible rule which the law should lay down, and which should trust nothing to the integrity, and nothing to the discretion of the council, must necessarily work mischief in many cases, and it would be productive of good, I think, in few cases, if any."  This case is cited with approval and its ruling followed in the recent case of City of Baltimore v. Flack, 104 Md. 107, in which it was held that the selection of the kind of pavement to be laid need not be made in advance of the time when bids were called for.

The conclusion reached by the learned judge of the common pleas is thus stated : " We are of opinion that, under our law, specifications for alternative bids are not per se unlawful; that in this case all bidders had an equal chance to bid on the alternatives, and that the failure of a particular bidder to avail himself of all the opportunities does not vitiate the bids of the others ; that the action of the director has not been impeached by any evidence of fraud or collusion, but that on the contrary the presumption of law that he was performing his duty is confirmed by the oral evidence presented, and has not been in any way assailed, and, finally, that the allegation of the plaintiff that the Mack Paving Company was the lowest bidder has not been sustained." This conclusion was fully warranted by the law and the facts. The decree is affirmed at the cost of the appellant.

MESTREZAT, J. dissents.