# Hibbs et al., Appellant, v. Arensberg et al.

*School law—School directors—Executive functions—Presumption—Discretion—Contracts—School building—Inspector—Architect—Specifications for bidding—Advertisement—Time—Abuse of discretion—Burden of proof—Improper award of contract—Time for completion of building—"Lowest responsible bidder"—Act of July 10, 1919, P. L. 889.*

1. Executive officers have the power and responsibility of originating and executing plans for the public good.

2. Abuse of discretion usually springs from improper influences, a disregard of duty or violation of law.

3. Courts will interfere only in case of an abuse of discretion adverse to public welfare.

4. The presumption is their acts are based on considerations for the public good, and their decisions reached after investigation; when their actions are challenged, the burden of showing the contrary rests on those asserting it.

5. An advertisement for bids or the specifications must state the time within which the building should be completed.

6. An architect's plans and specifications need not minutely state kind, quality and quantity of materials required.

7. An architect must supply a sufficient number of copies of plans and specifications for all persons who within a reasonable time express a wish to bid.

8. If reputable contractors are deprived of the opportunity to submit prices through failure to obtain plans and specifications, an award of the contract is illegal.

9. School directors may, without reletting, change the character or quality of materials or a part of the structure as originally planned, but these new departures must not be of such magnitude as to constitute a new undertaking.

10. A contract deemed too high at a first meeting of the directors may be awarded at another meeting.

11. Notice of the hour fixed for the meeting should be given to all directors within a reasonable time, and no action should be taken until the hour arrives.

12. Contracts are not bound to be awarded to the lowest bidder, under the Act of July 10, 1919, P. L. 889.

13. Lowest responsible bidder does not alone mean the lowest bidder in dollars, nor may a higher bidder be capriciously accepted; it contemplates consideration of the financial standing, reputation,

experience, resources, facilities, judgment and efficiency as builders; giving a bond does not make up for these qualifications.

14. An inspector in the construction of a school building, may be employed by the directors without advertising.

Submitted October 4, 1922. Appeal, No. 84, Jan. T., 1923, by plaintiffs, from decree of C. P. Fayette Co., No. 1058 in equity, dismissing bill in equity, in case of James W. Hibbs, William J. Stewart and N. E. Porter, on behalf of themselves and such other taxpayers of the school district of Luzerne Township as may desire to join therein, v. J. R. Arensberg et al., School Directors of the School District of Luzerne Twp., and Dominick DeGregorio, doing business as Republic Construction Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Bill in equity for an injunction. Before REPPERT, J.
The opinion of the Supreme Court states the facts.
Bill dismissed. Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting record.

*Sturgis, Morrow & Sturgis,* for appellants.—The four school directors, who gave the contract to a high bidder, in so doing did not and could not have exercised such discretion as it was their duty to exercise: Lamb v. Redding, 234 Pa. 481.

Where the specifications for the erection of a public school building let under the provisions of the Act of May 18, 1911, P. L. 309, contain no notice as to the time for completing the contract and each bidder specified his own time, there was no common basis upon which the bids could be computed: Edmundson v. School Dist., 248 Pa. 559; Kroshinsky v. School Dist., 44 Pa. C. C. R. 327.

The specifications were not obtainable by all: Mazet v. Pittsburgh, 137 Pa. 548; Kroskinsky v. School Dist., 44 Pa. C. C. R. 327.

The employment of inspector was illegal.

*J. B. Adams* and *H. S. Dumbauld,* for appellees.—Date for completion of building was duly fixed, and compensation for delay provided.

Seven bidders put in bids from plans and specifications furnished, an unusually large number of bids on any contract. How many other plans were given out was not stated.

Duties of a school board are not simply ministerial but deliberative and discretionary: Com. ex rel. v. Mitchell, 82 Pa. 343; Findley v. Pittsburgh, 82 Pa. 351; Paving Co. v. Phila., 164 Pa. 477; Reuting v. Titusville, 175 Pa. 512; Edmundson v. School Dist., 248 Pa. 559; Lamb v. Redding, 234 Pa. 481.

OPINION BY MR. JUSTICE KEPHART, January 3, 1923:

Executive officers of municipal and school districts have many discretionary powers in performing their functions; ordinarily courts will not interfere with this exercise, but if it appears their action is based on a misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice, courts will intervene to prevent an abuse of power adverse to public welfare. Executive officers are clothed with the responsibility of originating and executing plans for the public good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after investigation. When their actions are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden; courts can and will interfere only when it is made apparent this discretion has been abused. Abuse of discretion does not, as a rule, come from unwise acts or mistaken judgment, but gen-

erally springs from improper influences, a disregard of duty, or a violation of law.

It is averred, in the bill to restrain the school directors from awarding the contract to construct a badly needed school building in a school district in Fayette County, that the architect's plans and specifications do not fully state the kind, quality and quantity of materials required. One special item reads: "The face brick......to be a thoroughly vitrified wire-cut face brick of such color as will be selected by the architect and school board...... to cost not more than $34 per thousand." We see no reason why an intelligent bid could not be made on this item. Vitrified wire-cut face brick has a definite meaning; the contract preserved the right of inspection and rejection of materials, and there was little opportunity to slight the quality. If a certain make of brick had been selected, or several makes, we can readily see a charge of a different character might be presented. That the directors later decided to use a little more expensive brick would not condemn the letting, or cause the directors to be liable for the increased price, or avoid the purchase. There was no such departure from the general purpose as would require reletting. Unforeseen contingencies or new ideas sometimes make it necessary to change the character or quality of material or a part of a structure from the original plans. A certain flexibility in the power of officials to take care of these matters is intended to be granted, that the law relating to public letting may not become an instrument of oppression through a too rigid construction. These officers must act honestly, reasonably and intelligently, and a new departure must not so vary from the original plan or be of such importance as to constitute a new undertaking, which the act controls, and where fairness could only be reached through competitive bidding. Courts, however, will be slow to interfere unless it appears the officers are not acting in good faith.

When the advertisement for bids was made neither it nor the specifications stated the time within which the building should be completed. This was in direct conflict with Edmundson v. Pittsburgh School District, 248 Pa. 559, 563, where we said that when each bidder specified his own time for completing the contract there was no common basis upon which bids could be computed.

This was not the only mistake in the letting. The architect did not supply a sufficient number of copies of the plans and specifications for all those who expressed a wish to bid; reputable contractors were deprived of the opportunity to submit prices. Competitive bidding could not be secured under these conditions. We cannot too strongly condemn the motives of some architects and public officials in following this practice; it opens the door to the grossest kind of fraud. A favored contractor, apprised in advance, may easily have the limited number of plans and specifications on file lifted by persons not bona fide bidders, or, through a combination none too infrequent, the favored contractor submits a price (the lowest) that is high enough to give an excessive profit and pays to other higher bidders a commission "or rake-off" as their part of the gain for participating in the combination. Of course there are other methods. Officials must have on file enough sets of plans and specifications to supply those who demand them within a reasonable time prior to the day on which the bids are to be submitted. The time within which a request is made should be sufficient to enable the architect to furnish additional copies if those first furnished have been exhausted. The court was in error in passing over this fact as not being of sufficient consequence to restrain the work.

At the first meeting of the board, after the bids were submitted, they were all deemed too high. A week later, at an adjourned meeting, the bid of the Republic Construction Company, fourth lowest bidder, was accepted

by the vote of four of the directors; two of the board were not present and another, though present, did not vote. While the board thought the bids high at the first meeting, this did not conclude the question; we know of nothing in the law to prevent awarding the contract on these bids at a subsequent meeting. Notice of the later meeting should be given to all the directors, and they should all be present if possible. The law contemplates the combined judgment of all; one of them, from experience and practical knowledge, may prove of invaluable service to the board. If all the members had notice, within a reasonable time, of the hour fixed, and a majority appeared, that majority could proceed with the transaction of business, but the letting should not be considered until the hour fixed for the meeting. We may assume, from the findings, the majority acted after the time fixed.

The contract was awarded to the fourth lowest bidder without investigating the responsibility of the three lower bidders. This is contrary to the Act of July 10, 1919, P. L. 889, section 617 (School Code), which directs the contract to be let to the lowest responsible bidder. The term "lowest responsible bidder" does not mean the lowest bidder in dollars; nor does it mean the board may capriciously select a higher bidder regardless of responsibility or cost. What the law requires is the exercise of a sound discretion by the directors; they should call to their assistance the means of information at hand to form an intelligent judgment. They should investigate the bidders to learn their financial standing, reputation, experience, resources, facilities, judgment and efficiency as builders. This was not done. The court below censures the board for omitting this important step, but it holds, inasmuch as they had ample knowledge of the successful bidder and the merit of its work, the contract could be awarded. This might do in private affairs, but will not pass when public funds are at stake; it is not the exercise of discretion. Though the directors

were not bound in law to give the contract to the lowest bidder, who might be irresponsible, they were bound to investigate, and, if a bidder measured up to the law's requirement as a responsible party, the board could not capriciously award the contract to another. Giving a bond alone does not make up for responsibility; we have too many bonding companies willing to indemnify almost anything. But there should be a sufficient reason, where a bidder is lowest and responsible, why the job was not given to him. And, where such reason appears, the action of the board is generally conclusive. See Douglass v. Com., 108 Pa. 559, 563; Interstate, etc., Paving Co. v. Phila., etc., 164 Pa. 477, 479; Reuting v. Titusville, 175 Pa. 512, 520; Findley v. Pittsburgh, 82 Pa. 351, 353; Com. v. Mitchell, 82 Pa. 343, 349.

When the contract was adopted an inspector was selected to give personal attention to the work. Appellants urge this could be done only after advertising. We do not so understand the law. The section above referred to does not require public notice for these engagements. The character of the position, with the work to be done, is of importance. Unless directed by law to the contrary, these authorities should be free to select the best available services. The inspector's duties are not comprehended in the architect's work; the former must make daily observation as the work progresses, to see that the contract is fully complied with as to quantity and quality of material and workmanship. He is the owner's special representative, and, unless on the ground during all the working time, his employment is useless and the district should not be called upon to pay for it. The cost is here on a per diem basis, and no doubt will be properly controlled.

We have indicated in this opinion where we think the court below was in error in permitting the work to go ahead. On the record presented, the school board was without authority to award the contract and bind the school district.

The decree of the court below is reversed, the bill is reinstated with a procedendo to issue the injunction as prayed for in the bill; costs to be paid by appellee.