**J.J.D. URETHANE CO. and John J. DiNenna, Appellants,**

v.

**MONTGOMERY COUNTY, Mario Mele, Richard Buckman and Joseph Hoeffel, Commissioners.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1996.

Decided May 16, 1997.

---

Frederic M. Wentz, Norristown, for appellants.

Vincent A. Cirillo, Jr., Norristown, for appellees.

Before SMITH and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

LEADBETTER, Judge.

J.J.D. Urethane Co. and John DiNenna (collectively "Urethane")[1] appeal from an order of the Court of Common Pleas of Montgomery County that dismissed their complaint in mandamus and denied their request for an injunction. Appellants assert that the Commissioners of Montgomery County violated Pennsylvania law when they awarded a public contract to a contractor who had submitted a higher bid than that submitted by J.J.D. Urethane Co. We affirm.

On April 1, 1995, the Montgomery County Commissioners posted a public bid for the furnishing of all labor and materials for re-roofing the nine-story Tower Building at the Montgomery County Geriatric and Rehabilitation Center. A complete removal of the existing roofing and replacement was called for in the contract specifications. The specifications further required that a temporary exterior elevator be installed to convey personnel, machinery and materials to and from the roof of the Tower Building. During a pre-bid meeting, a question arose as to whether the county would allow an exterior scaffold-type stairway in lieu of the elevator. On May 11, 1995, the county amended the contract proposal form to provide that "[i]n lieu of exterior elevator the contractor may elect to substitute a stairway." The amended proposal form directed contractors to submit a base bid reflecting the cost to perform the advertised contract utilizing the elevator and an alternate bid reflecting an addition or deduction from the base bid amount to reflect the use of a stairway. At all times, the county reserved the right to reject any and all bids.

Upon the opening of the sealed bids it was found that on the base bid (including an elevator), Hygrade Co. was the lowest bidder. On the alternate (stairway) bid, Ure-

---

1. Mr. DiNenna is a resident and taxpayer of Montgomery County. He is also the owner and president of J.J.D. Urethane Co.

thane was the lowest bidder. Overall, Urethane's bid on the stairway alternative was the lowest. It is undisputed that except for price and the conveyance mechanism, there was no difference in the bids; both contractors were deemed to be responsible bidders and would construct the same kind and quality of roof.

■ On June 1, 1995, the county announced that Hygrade was selected as the lowest responsible bidder and the contract was awarded to Hygrade. The county selected Hygrade, rather than J.J.D. Urethane, as the winning bidder on the ground that the cost of the elevator was within budget and the elevator was the better means by which to ensure safety at the job site. On June 15, 1995, appellants filed a complaint in mandamus and request for injunction. After a hearing, the trial court dismissed the complaint and denied injunctive relief.[2] This appeal followed.

■ "Where bids for public work are invited and received in the alternative, there is a presumption, in the absence of fraud or collusion, that the public officials charged with the duty of awarding a contract thereunder acted in good faith and in the best interests of the governmental agency in making the award." *McIntosh Road Materials Co. v. Woolworth*, 365 Pa. 190, 210, 74 A.2d 384, 393 (1950). When the actions of such public officials are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden. *Hibbs v. Arensberg*, 276 Pa. 24, 26, 119 A. 727, 728 (1923).

■ However, the county's discretion is not unfettered. When a county is expending public funds it has a duty to employ competitive bidding imposed by the General Assembly so that it attempts to secure for the taxpayers the least costly contract. *Lasday v. Allegheny County*, 499 Pa. 434, 440, 453 A.2d 949, 952 (1982). Unless there is an emergency, County Commissioners are prohibited from making a contract in excess of

ten thousand dollars ($10,000) except with and from the lowest responsible bidder meeting specifications. Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. § 5001(a)—(a.1).[3] The general standard was stated by our Supreme Court in *Hibbs:*

> Though the directors were not bound in law to give the contract to the lowest bidder, who might be irresponsible, they were bound to investigate, and, if a bidder measured up to the law's requirement as a responsible party, the board could not capriciously award the contract to another. 276 Pa. at 29–30, 119 A. at 729.

■ Since it is undisputed that Urethane was a responsible bidder which submitted the lowest overall bid, it argues that the award to Hygrade was capricious, and an abuse of discretion. However, the court in *Hibbs* went on to note that: "[b]ut there should be a sufficient reason, where a bidder is lowest and responsible, why the job was not given to him. And, where such reason appears, the action of the board is generally conclusive." 276 Pa. at 30, 119 A. at 729. Here, the county articulated worksite safety concerns as its reason for selecting Hygrade. The county reasoned that laborers would be less likely to enter the building if they had access to an elevator, rather than walking nine flights of stairs when they needed to go on break for personal convenience or to access equipment on the ground. As the trial court noted:

> According to the record, the building in question is a nine-story, high-rise that houses approximately six hundred (600) geriatric patients. On the eighth floor, the floor immediately under the roof where the work is to be done, live Alzheimer's patients. It was the explanation of the County that once the base bids, which included the construction of an elevator, were opened, the Commissioners decided this was the safer manner in which to complete the project, rather than subject the Al-

---

2. "This Court's scope of review in a mandamus action is to determine whether the trial court abused its discretion or committed an error of law and whether sufficient evidence exists to support its findings." *Randolph Vine Assoc. v.*

*Zoning Bd. of Adjustment of Philadelphia*, 132 Pa.Cmwlth. 452, 573 A.2d 255, 258 (1990).

3. The re-roofing contract was in excess of $10,-000.

zheimer's patients who live in the building, to frequent confrontations with construction workers, as could be the case with the scaffold-type staircase over the elevator. The alternate bids which included the deductions for the staircase, were permitted based on the concern to keep the project under budget. Once the base bids came in under budget, the Commissioners felt they were free to award the bid to the lowest responsible bidder who could perform the job in the manner safest to the residents of the Geriatric Center.

(Op. Sept. 12, 1995, p. 3) (footnotes omitted).

■ Nonetheless, Urethane challenges the *bona fides* of the county's safety concerns because: "no mention is made in either the original advertisement or Addendum No. 1 of any concern with regards to the inherent safety qualities in the use of either an external elevator or a stairway for completion of the project."[4] To the extent that Urethane is arguing that the county's safety concerns are pretextual, the simple answer is that the Court of Common Pleas did not so find. After a hearing, the trial court accepted the county's reasons as genuine, and we may not superimpose our credibility judgments over that of the fact-finder.

■ We must emphasize, however, the importance of this fact finding function and caution that it goes beyond simply ascertaining that the government can *articulate* some basis for its choice. The integrity of the bid system, not to mention the plain language of the statute, requires that once the plaintiff has made its prima facie showing that it is the lowest of the responsible bidders, the burden shifts to the government to prove that its award to a higher bidder was based upon reasons which were substantial and genuine.

Urethane's argument goes further than an attempt to assert a pretext claim however. Because the county put both the elevator and stairway alternatives out to bid, Urethane argues, it made a pre-determination that both were acceptable, i.e., sufficiently safe, and therefore was bound to select the lowest overall responsible bidder. Essentially, it is

arguing that once an adequate level of safety has been established in the bid specifications, the county may not later weigh enhanced safety against increased costs. We find this argument unpersuasive. Safety is not an absolute, and it is self-evident that the relationship of added security to price increase is not always proportional. These are values which must be carefully weighed, and such an assessment may not be possible until the actual cost alternatives are defined by the bids. Moreover, the relevant case law, although sparse, makes clear that alternative specification bids are permissible. The very concept of alternate specification bids approved in these cases is calculated to allow the responsible government entity to weigh the costs and benefits of different types of proposals after the costs are known.

For instance, in *Mayer Bros. Construction Co. v. Erie Parking Auth.*, 189 Pa. Superior Ct. 1, 149 A.2d 495 (1959), a municipal parking authority had requested bids to pave a parking site with concrete or blacktop paving. After a review of the bids submitted and consideration of the merits of both types of paving in relation to the bid prices, the parking authority rejected all blacktop bids and awarded the contract to the lowest concrete bidder. The lowest bid for blacktop and the lowest bid overall were submitted by plaintiff. On appeal, the plaintiff asked the Superior Court to consider whether the parking authority, in advertising bids for two types of material to be used in the construction of a parking site, exercised a discretion before and at the time the bids were invited and, therefore, had no authority to exercise any discretion after the bids were received. The court held that the parking authority had not lost its discretion to chose between the two types of paving materials. Rather, alternative bidding was deemed to be a permissible method by which the parking authority could determine the lowest price on both types of material in order to aid it in its final decision as to which material would be selected.

Similarly, in *Parker v. Philadelphia*, 220 Pa. 208, 69 A. 670 (1908), our Supreme Court approved:

---

4. Brief for Appellants at 6.

The general custom of long standing ... to require bidders in certain classes of public work to furnish samples of the articles they proposed to furnish, in order that the quality of the sample may be taken into consideration in awarding the contract, thus bringing into competition both the price and the quality of the thing to be furnished.

220 Pa. at 211, 69 A. at 671. *See also Brener v. Philadelphia*, 305 Pa. 182, 185–86, 157 A. 466, 467 (1931).

Urethane attempts to distinguish these cases because they all deal with proposals in which higher price was justified in order to obtain a higher quality product, whereas, the roofs to be built by Hygrade and Urethane were identical. It points to the language in *Mayer Brothers* that "[i]t appears, therefore, that the kind and quality of materials being equal, the Authority must accept the lowest bid." 189 Pa. Superior Ct. at 5, 149 A.2d at 497. We believe Urethane reads the law too narrowly. While the language may refer to product quality—the factor at issue in those cases—we believe the principle for which they stand is that government entities may solicit alternative specification bids so that after the varying prices are bid, the entities may weigh the costs and benefits of different proposals. These benefits, to be sure, may relate to product quality, but they may also reflect other important values such as workplace safety or time to complete the project, etc. Accordingly, we hold that the county's concern for the safety of the patients at the Montgomery County Geriatric Rehabilitation Center was a relevant factor in determining which contractor was the lowest responsible bidder meeting specifications for the re-roofing project.

Urethane contends that the expenditure of taxpayer dollars for the use of an elevator is an extravagance unduly burdening the taxpayers. While the avoidance of extravagance is one purpose served by competitive bidding requirements, *Weber v. Philadelphia*, 437 Pa. 179, 183, 262 A.2d 297, 300 (1970); *Conduit and Foundation Corp. v. Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d 376, 379 (1979), Urethane presented no evidence to demonstrate the alleged extravagance other than the simple fact that the elevator cost more money than the stairway. On the other hand, the county demonstrated that it could afford to pay for the elevator and that it had a legitimate safety basis for selecting the elevator in lieu of the stairway. Under these circumstances, we will not interfere in the county's decision to award the re-roofing contract to Hygrade. Our decision is in accord with the long-standing principle of competitive bidding that "on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the *wisdom* of municipal actions and *judicial* discretion should not be substituted for *administrative* discretion." *Weber v. Philadelphia*, 437 Pa. at 183, 262 A.2d at 299. See also *Wilson v. New Castle*, 301 Pa. 358, 364–365, 152 A. 102, 104 (1930).

Affirmed.

## ORDER

AND NOW, this 16th day of May, 1997, the Order of the Court of Common Pleas of Montgomery County dated June 29, 1995, is hereby affirmed.