IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Health and        :
Wellness, Inc.,                      :
              Petitioner       :
                            :
        v.                 :
                            :
Department of Human Services,  :   Nos. 1107 C.D. 2020 & 2 C.D. 2021
            Respondent    :   Argued:  October 18, 2021


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED:  November 17, 2021


Pennsylvania Health & Wellness, Inc. (PHW) has filed petitions for review of two Final Determinations (jointly, Final Determination) by the Secretary of Human Services (Secretary)[1] of the Pennsylvania Department of Human Services (Department) denying PHW's bid protests under Request for Applications 07-19 (RFA) relating to the Commonwealth's HealthChoices Medicaid (HealthChoices) Program. The petitions have been consolidated for disposition by this Court. On review, we affirm the Secretary's Final Determination.

---

[1] For purposes of the Final Determination, the Secretary of Human Services (Secretary) of the Department of Human Services (Department) appointed a designee, Jonathan Rubin, Deputy Secretary of the Department's Office of Children, Youth and Families. Final Determination, October 20, 2020 (Final Determination 1) at 23. For ease of reference, this opinion refers to the designee as the Secretary and the designee's Final Determination as that of the Secretary.

## I. Background

HealthChoices is a managed care program for Medicaid recipients. Managed care organizations (MCOs) administer the HealthChoices Program in five Pennsylvania zones – Northeast, Southeast, Lehigh-Capital, Northwest, and Southwest. The Department contracts with multiple MCOs to administer HealthChoices Program benefits and services in each zone.

PHW is a wholly-owned subsidiary of Centene Corporation, the largest Medicaid MCO in the United States. Since its founding in 2015, PHW has participated in all of the Department's procurement processes regarding the HealthChoices Program. PHW has served as a contracted MCO in a separate program, Community HealthChoices (CHC), since January 2018.

In September 2015, the Department issued Request for Proposals (RFP) 06-15 to begin the process of entering into new contracts for administration of the HealthChoices Program in all five zones. PHW submitted a proposal for all five zones. In April 2016, the Department accepted PHW for negotiations to provide service in three zones. However, in a lawsuit by another applicant, this Court enjoined negotiation or implementation of contract awards on RFP 06-15, based on the Department's use of an undisclosed "heritage factor" in its evaluations that favored MCOs with current contracts. *See Aetna Better Health of Pa., Inc. v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 351 M.D. 2016, filed July 19, 2016), slip op. at 32, 2016 Pa. Commw. Unpub. LEXIS 1120 (unreported).

The Department then withdrew RFP 06-15 and reissued it as "RFP 06-15 (Reissued)." PHW again submitted a proposal for all five zones. In November 2016, the Department accepted PHW for negotiations in all 5 zones. However, the Department rescinded its selections the next day because of a scoring error and then

2

rescored the proposals. In December 2016, the Department notified PHW of its acceptance for negotiations in three zones. However, in April 2018, all negotiations were cancelled after successful protests of RFP 06-15 (Reissued), where this Court concluded that the Department's discussions with MCOs about bid modifications and readiness review violated the RFP and the Commonwealth Procurement Code (Procurement Code)[2] because only the Department's designated Issuing Officer, Karen Kern (Kern), may engage in such discussions. *UnitedHealthcare of Pa., Inc. v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 790 C.D. 2017, filed Apr. 10, 2018), slip op. at 27, 2018 Pa. Commw. Unpub. LEXIS 212, at *31-32 (unreported).

Meanwhile, in January 2018, after being selected under a separate March 2016 RFP, PHW began providing services in the Department's CHC Program, which serves participants with dual eligibility for Medicaid and Medicare. PHW developed a network of providers and partners with community groups to serve participants in the CHC Program.

In October 2019, the Department issued the RFA in a third attempt to seek new contracts regarding administration of the HealthChoices Program. PHW submitted an application for four zones. The Department did not select PHW for negotiations in any of those zones. PHW filed five bid protests; four were consolidated and the fifth proceeded separately.

The Secretary disposed of the bid protests in two determinations issued October 23, 2020 (Final Determination 1), and December 18, 2020 (Final Determination 2).[3]

---

[2] 62 Pa. C.S. §§ 101-2311.

[3] Final Determination 2 incorporated by reference all arguments asserted in PHW's fifth bid protest that had already been addressed in Final Determination 1. Br. of Pet'r, Ex. B, Final

3

In the Final Determination, the Secretary rejected PHW's argument that the Department was biased against PHW because of PHW's expressions of concern regarding pricing issues in its CHC contract. Br. of Pet'r, Ex. B (Final Determination) at 7-8. The Secretary also rejected PHW's contention that the Department improperly based its evaluation of PHW's application on undisclosed criteria. *Id.* at 8-9 & 15-20. The Secretary further determined PHW had failed to prove its assertion that the Department had improper contacts with applicants concerning the RFA after the application due date. *Id.* at 10-11. The Secretary likewise concluded PHW had not established that the Department changed its readiness review process or that the alleged change would have violated the RFA. *Id.* at 11-12. Additionally, the Secretary rejected PHW's argument that the Department's debriefing documents showed it misread PHW's application and evaluated competing applicants inconsistently. *Id.* at 14-15 & 20-22. Finally, the Secretary refused PHW's request for an evidentiary hearing, finding the record was sufficient to allow issuance of a determination. *Id.* at 23.

PHW then filed its petitions for review. Several other applicants have intervened in this matter.[4] Briefing and argument are complete and the consolidated petitions are ready for disposition.

---

Determination 2 at 5. PHW has not raised here any issues the Secretary addressed separately in Final Determination 2. Therefore, for convenience, this opinion addresses all issues in relation to Final Determination 1. We note that Final Determination 1 also included some issues that PHW has not raised in its petition for review before this Court and that are not addressed here.

[4] The intervenors are Aetna Better Health of Pennsylvania, Inc., Gateway Health Plan, Inc., Geisinger Health Plan, Inc., Health Partners Plans, UnitedHealthcare of Pennsylvania, Inc., UPMC For You, Inc., and (jointly) Vista Health Plan, Inc., AmeriHealth Caritas Health Plan, and Keystone Family Health Plan.

## II. Issues

On appeal,[5] PHW argues the Final Determination was arbitrary and capricious and an abuse of discretion, and the Department failed to comply with the RFA, the Procurement Code, and the Procurement Handbook.[6]

First, PHW alleges bias by the Department. PHW asserts that it has a successful record of providing CHC Program services in Pennsylvania, but the Department became critical of PHW as an MCO after PHW complained about CHC rates and eligibility during the period when the Department was considering applications under the RFA in the first half of 2020. PHW provided a sworn declaration that it received what it considered to be "veiled threats" from the former Deputy Secretary of the Department's Office of Long-Term Living (OLTL) implying that continuing its complaints could hurt its position as an applicant under the RFA. Br. of Pet'r at 15-16 (citing Reproduced Record (RR) 66a-67a). According to PHW, the Secretary applied an incorrect legal standard by imposing on PHW the burden of proving bias. PHW insists the Secretary failed to recognize evidence that corroborated PHW's sworn declaration regarding the alleged threat. The Secretary also failed to include any findings of fact on this issue in the Final

---

[5] We will affirm the purchasing agency's determination unless the determination was arbitrary and capricious, an abuse of discretion, or contrary to law. 62 Pa. C.S. § 1711.1(i). An error of law occurs where an agency interprets its governing statutes, regulations, or orders contrary to their clear and plain meaning or fails to follow its own regulations and procedures. *See, e.g.*, *The People's Nat. Gas Co. v. Pa. Pub. Util. Comm'n*, 542 A.2d 606, 608 (Pa. Cmwlth. 1988), *aff'd*, 567 A.2d 642 (Pa. 1989).

[6] The Procurement Handbook can be found online at https://www.dgs.pa.gov/Materials-Services-Procurement/Procurement-Handbook/Pages/default.aspx (last visited Nov. 16, 2021).

5

Determination. PHW contends the Secretary's refusal to hold an evidentiary hearing on the bias issue[7] was arbitrary and capricious and violated the Procurement Code.

PHW also asserts that the Department improperly used an unstated evaluation criterion that unfairly benefitted incumbent applicants. Although PHW does not argue that the Department applied the heritage factor as such, PHW argues the Department still erred because it nonetheless assessed applicants' experience as current contracting MCOs in evaluating the applications.

According to PHW, the Final Determination was also arbitrary and capricious because the Department evaluated applicants' strengths and weaknesses in a non-uniform manner and misread PHW's application. Specifically, both PHW and a competing applicant, Aetna Better Health of Pennsylvania, Inc. (Aetna), regularly post preferred drug lists on their websites, but Aetna received a "strength" notation on a debriefing document from the Department for doing so and PHW did not; and both PHW and Aetna use subcontracts for various management services, but Aetna received only a "minor weakness" from the Department for doing so, while PHW received a "weakness" notation.

PHW further contends that the Department improperly engaged in communications with other applicants related to the RFA. PHW argues such communications violated the non-contact provision of the RFA.

Finally, PHW asserts that the Department acted arbitrarily and capriciously by abandoning its prior readiness review process in favor of self-attestations of readiness by applicants and by engaging in improper communications with other applicants concerning the RFA, in violation of the RFA.

---

[7] As discussed further below, the Secretary observed that the Deputy Director was not on the Department's application evaluation committee; further, the Secretary implicitly determined that any perceived threat was insufficient to require a hearing, because no material fact was at issue. *See* Pet. for Review, Ex. A (Final Determination 1) at 7 & 23.

6

PHW seeks cancellation of the RFA and asks this Court to order the Department to rescind its notices of selection and reissue the RFA fairly. Alternatively, PHW asks us to remand this matter to the Department with directives to vacate the Final Determination, provide requested documents to PHW, and then either allow PHW to supplement its bid protests or provide PHW with a full evidentiary hearing.

## III. Discussion

### A. Bias

First, PHW alleges the Department was biased against it. PHW claims it has a successful record of providing CHC services in Pennsylvania, but the Department became critical of PHW as an MCO after PHW complained about CHC rates and eligibility issues during the period when the Department was considering applications under the RFA in the first half of 2020. PHW provided a sworn declaration asserting that it received "veiled threats" that continuing its complaints could hurt its position as an applicant under the RFA. Br. of Pet'r at 15-16 (citing RR 66a-67a). However, the Secretary determined PHW had failed to prove bias.

PHW suggests the Secretary erred by imposing on PHW the burden of showing bias by the Department. We discern no merit in this argument. As the Secretary correctly explained:

> "Where bids for public work are invited and received . . . , there is a presumption, in the absence of fraud or collusion, that the public officials charged with the duty of awarding a contract thereunder acted in good faith and in the best interests of the governmental agency in making the award." *McIntosh Rd. Materials Co. v. Woolworth*, 74 A.2d 384, 393 (Pa. 1950). The determinations an agency makes to use competitive sealed proposals and in selecting offerors to proceed to

7

negotiations after a competitive procurement process are final and conclusive unless they are clearly erroneous, arbitrary, capricious, or contrary to law. 62 Pa. C.S. § 561.

. . . As the protesting party, PHW has the burden of demonstrating that the Department abused its discretion. *See Stanton-Negley Drug Co.* [*v. Dep't of Pub. Welfare*, 943 A.2d 377, 387 (Pa. Cmwlth. 2008)]; *A. Pickett Constr., Inc. v. Luzerne Cnty. Convention Ctr. Auth.*, 738 A.2d 20, 26-27 (Pa. Cmwlth. 1999); *J.J.D. Urethane Co. v. Montgomery Cnty.*, 694 A.2d 368, 370 (Pa. Cmwlth. 1997) (citing *Hibbs v. Arensberg*, 119 A. 727, 728 (Pa. 1923)).

Final Determination 1 at 5. PHW does not allege fraud or collusion. In light of the general presumption that the Department acted in good faith in the selection process, as well as the general principle that an applicant in a bid protest has the burden of proof, we conclude the Secretary did not err in imposing on PHW the burden to prove bias by the Department.

The Secretary determined that PHW failed to meet its burden of proving bias. The Secretary reasoned:

PHW believes that the Department retaliated against it due to its complaints regarding the [CHC] [P]rogram operated by the [OLTL]. [PHW First Protest] at 10-12, 19. PHW cites comments made by the former Deputy Secretary of [the] OLTL that PHW would need to decide how much its complaints regarding the CHC rates was [sic] worth to it, which PHW interpreted as implying that its prospects in the procurement process for Commonwealth contracts would be affected if it continued to raise concerns regarding CHC. *See* PHW First Protest, Exhibit E; PHW First Protest, Exhibit F. PHW argues this supports a "logical inference" that PHW's non-selection was the result of bias and retaliation due to its criticism of the CHC [P]rogram. PHW First Protest, p. 19. PHW further asserts that its selection under prior procurements for the HealthChoices . . . [P]rogram and its performance in the CHC [P]rogram is [sic] probative of the Department's bias

8

and retaliatory motive. PHW First Protest, p. 19; PHW Reply to First Protest, p. 12.

> PHW has failed to meet its burden of establishing that the Department acted with any improper bias or retaliatory motive. The former Deputy Secretary [of the OLTL] was not a member of the evaluation committee, did not participate in the evaluations of the applications, and was not involved in the procurement process. [Department's Office of Medical Assistance Programs'] Response to Second Protest, Exhibit 3. He also did not have any authority over the HealthChoices . . . Program. *Id.* Any statements he may have made, and PHW's interpretation of those statements, is [sic] insufficient to show he represented the evaluation committee or the Department as a whole, such that his views demonstrated a bias or retaliatory motive in the procurement process undertaken here.

Final Determination 1 at 7. We agree with the Secretary's cogent analysis.

PHW argues the Secretary should nonetheless have held an evidentiary hearing on the bias issue. We disagree. Section 1711.1(e) of the Procurement Code provides: "The head of the purchasing agency or his designee shall review the protest and any response or reply and may request and *review such additional documents or information he deems necessary* to render a decision and *may, at his sole discretion, conduct a hearing*. . . ." 62 Pa. C.S. § 1711.1(e) (emphasis added). Section 1711.1(e) further directs the head of the purchasing agency to "provide to the protestant and the contracting officer a reasonable opportunity to *review and address* any additional documents or information . . . ," but it does not state that the agency must allow a protestant to address documents or other information by means of testimony at a hearing. *Id.*; *see also BosWell Pharm Servs., LLC v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 1532 C.D. 2008, filed April 30, 2009), slip op. at 5 n.5,

9

2009 Pa. Commw. Unpub. LEXIS 216, *6 n.5 (unreported)[8] (whether to hold a hearing is within the presiding officer's discretion; "[b]ecause a request for proposals and bids are [sic] submitted 'on paper,' the usual practice is that the bid protest be resolved without a hearing as a bid protest cannot be used to supplement a bidder's or offeror's proposal"). The Secretary concluded the existing record contained all the information required in order to render the Final Determination. We discern no abuse of discretion in that conclusion.

Here, moreover, the Secretary evidently concluded any disputed issues concerning bias were not material. *See* Final Determination 1 at 23 (citing *BosWell*, slip op. at 5 n.5, 2009 Pa. Commw. Unpub. LEXIS 216, at *6 n.5 (there is no abuse of discretion in declining to hold a hearing where the bid at issue is defective as a matter of law)). We agree. As quoted above, the Secretary determined that the former Deputy Secretary of the OLTL had no connection with the application, evaluation, or selection process regarding the RFA. Therefore, even assuming that the former Deputy Secretary made the statements PHW attributes to him, he could not have influenced the selection process, and his statements did not indicate any bias on the part of the Department as a whole or its selection committee. Thus, any dispute of fact concerning the alleged statement was immaterial and did not support the need for an evidentiary hearing.

**B. Fairness Issues in Evaluations**

A purchasing agency has significant discretion in its decisions on bid protests; however, "[w]hen there is no rational support in the record for a finding of

---

[8] Unreported opinions of this Court issued after January 15, 2008 may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

fact, there has been a manifestly unreasonable error in judgment and, therefore, an abuse of discretion." *Computer Aid, Inc. v. Dep't of Pub. Welfare* (Pa. Cmwlth., No. 553 C.D. 2011, filed July 6, 2011), slip op. at 12, Pa. Commw. Unpub. LEXIS 532, at *18 (unreported) (citing *Allegheny Cnty. v. Golf Resort, Inc.*, 974 A.2d 1242 (Pa. Cmwlth. 2009), and *Rosing, Inc. v. Pa. Liquor Control Bd.*, 690 A.2d 758, 760 (Pa. Cmwlth. 1997)). PHW raises several factual challenges to the Final Determination. We address each in turn.

### 1. Favoritism toward Incumbents

PHW observes that previously, in connection with RFP 06-15, the Department admittedly applied a "heritage factor" in evaluating the proposals by all applicants. *See Aetna Better Health*, slip op. at 4-5, 2016 Pa. Commw. Unpub. LEXIS 1120, at *4-5. The Department applied the heritage factor to favor any incumbent applicant having at least a 25% market share of Medicaid participants in a serviced zone; the Department reasoned that the disruption likely to arise from cessation of such an incumbent's services would outweigh some shortfalls in the rest of the incumbent applicant's evaluation scores. *Id.* However, the Department did not disclose in the RFP that it would be applying the heritage factor as part of its evaluation process. On review of the Department's denial of bid protests, this Court expressed concern about the undisclosed criterion, enjoined the RFP 06-15 procurement, and ordered that if the Department chose to review Aetna's bid protest, that review should be performed by an independent hearing officer not employed by the Department and not connected to the RFP. *See Aetna Better Health*, slip op. at 32.

Here, PHW argues the Department again rewarded incumbent status, in violation of the RFA. Br. of Pet'r at 35-36. The Secretary, however, found that PHW failed to establish that the Department acted improperly by considering incumbency in its evaluations of applications under the RFA. Final Determination 1 at 15. We discern no error in this conclusion.

PHW points to debriefing documents provided by the Department to Aetna that listed among Aetna's strengths its history of services through HealthChoices, its existing personnel in place in all five zones, and its familiarity with agreement and collaboration requirements. Br. of Pet'r at 36 (quoting RR 3487a & 3492a). However, these evaluations of strengths do not support PHW's position for two reasons. First, Aetna, like PHW, was not selected for negotiations in any zone, so PHW has not shown that Aetna (or any other applicant) received any advantage from the supposedly unfair evaluation of its strengths. More importantly, there is a significant distinction between the general consideration of Aetna's experience reflected in the debriefing document cited by PHW and the Department's previous use of the heritage factor, which allegedly overrode inadequate scores based solely on an applicant's specific market share in the HealthChoices Program. The RFA stated that evaluations would take into account the applicants' relevant experience, and that is what the debriefing document reflects here. PHW points to no reason why the Department may not consider such experience, which is undeniably relevant. We agree with the Secretary that the Department did not improperly favor incumbent contractors merely by considering all of the applicants' relevant experience, including experience in the HealthChoices Program.

12

## 2. Non-Uniform Evaluations of Strengths and Weaknesses

PHW alleges there were discrepancies in the Department's assessment of strengths and weaknesses from applicant to applicant that the Secretary failed to recognize. PHW relies on its comparison of the debriefing documents the Department provided to PHW and Aetna. PHW charges that the "sheer number" of such discrepancies "suggests" the Department "likely" failed to provide sufficient uniformity in its evaluations. Br. of Pet'r at 42.

However, in its brief, PHW points to only two alleged discrepancies in the debriefing documents.[9] First, it contends Aetna received a "strength" designation for posting preferred drug lists on its website, but PHW did not receive a "strength" for posting its own preferred drug list on its website and in its member portal. Br. of Pet'r at 41. Second, PHW states that Aetna received only a "minor weakness" for using subcontractors to manage its vision, dental, pharmacy, chiropractor, information technology, and care management services, while PHW received a "weakness" for using subcontractors for its vision, dental, pharmacy, and radiology services. *Id.* PHW fails to explain how these alleged discrepancies prejudiced it, particularly considering that Aetna scored lower then PHW in the Department's evaluation and was not selected for negotiations in any zone. *See id.* at 19-21 (listing applicants' comparative evaluation scores). PHW's bare averment of numerous discrepancies, based on debriefing documents prepared after selections under the RFA were complete, is insufficient to demonstrate that the Department acted arbitrarily or capriciously in its comparative evaluations.

We observe further that the Department provided 10 pages of strengths and weaknesses in its debriefing document. *See* RR 2235a-44a. The two minor

---

[9] PHW made additional arguments before the Secretary but has not raised them here.

discrepancies cited by PHW are not substantial in light of the length of the document. This is particularly so because, as stated in both the RFA and the Procurement Handbook, debriefing documents are merely intended to help unsuccessful applicants understand "some" – not all – of the reasons for their rejection. *See* RR 141a (RFA at 15 § I-25); Procurement Handbook Pt. I Ch. 6 § B.14.b. Thus, two competing applicants may be adjudged as weak regarding the same factor during evaluations, but that specific weakness may not necessarily appear in both applicants' debriefing documents prepared after the fact.

For these reasons, we reject PHW's argument concerning the alleged discrepancies in the debriefing documents.

### 3. Assessed Weaknesses Based on Undisclosed Criteria

As noted in the previous subsection, the Department's debriefing document for PHW included ten pages of strengths and weaknesses the Department found in PHW's application. *See* RR 2235a-44a. PHW takes issue with two entries listed as weaknesses, in which the Department stated it would have liked more detailed information from PHW. PHW argues the Department's desire for more detail amounted to application of undisclosed criteria added to the RFA after applications were submitted. We disagree.

First, PHW cites the Department's statement that it would have liked a breakdown of estimated personnel time by zone for personnel not specifically allocated to any zone. Br. of Pet'r at 45 (citing RR 2236a). The Secretary concluded the Department did not err in deeming that lack of detail a weakness. Final Determination 1 at 16. We agree. Contrary to PHW's assertion, the Department's suggestion did not relate to an undisclosed criterion. In explaining the personnel

14

descriptions required in applications, the RFA specified: "If an [a]pplicant proposes to combine or split responsibility, its [application] must clearly indicate which individuals and offices will be responsible for each duty and function, and demonstrate that such duties and functions will be effectively performed and coordinated *in each [z]one*." RR 150a (RFA at 24 § III-4.C) (emphasis added). In light of this provision in the RFA, the Department's desire for zone-specific allocations of personnel time in the applications cannot be considered an undisclosed criterion. Indeed, it is difficult to imagine how an applicant could fully comply with this express requirement of the RFA without including a breakout of projected personnel time by zone for personnel working across multiple zones.[10]

Second, the Department indicated PHW's application would have been more effective if it had included more detail about PHW's Medicaid experience. RR 2235a. PHW's application stated that its parent corporation, Centene Corporation, is the national leader in Medicaid managed care. RR 2288a. The Secretary acknowledged that statement but concluded the Department could properly require additional detail regarding PHW's Medicaid experience. Final Determination 1 at 14. We discern no error in the Secretary's conclusion.

In its section regarding applicants' corporate experience, the RFA set forth express requirements for the content of an application:

> The Applicant must describe *its* experience or similar experience in providing managed care services, particularly experience with *programs similar in scope, size and complexity to the [] HealthChoices Program. . . . Experience shown should be work done by the individuals who will be assigned to the*

---

[10] Notably, the July 2019 projected number of Medicaid participants served in the HealthChoices Program varied widely by zone, from a low of 157,342 in the Northwest zone to a high of 816,467 in the Southeast zone. Reproduced Record (RR) 129a, RFA at 3. Thus, an applicant's allocation of personnel time to each zone might have a significant effect on the Department's selection of particular applicants for each zone.

*[z]one* as well as that of *your company*. This section of the application must include a description of *the Applicant's*:

> 1. Qualifications and experience with Medicaid managed care systems;
>
> 2. Qualifications and experience operating a managed care healthcare program . . . .

RR 149a (RFA at 23 § III-4.B) (emphasis added). These provisions required specific information about the *applicant's* experience, not merely a general indication of the size or status of its parent corporation. In light of the RFA's explicit provisions, the Department reasonably anticipated receiving detailed information relating specifically to *PHW's own experience*, including that of the specific individuals who would be working in each zone. Accordingly, we conclude the Department was not applying an undisclosed criterion, acting arbitrarily or capriciously, or abusing its discretion in suggesting that PHW would have been a stronger applicant if it had offered more supportive detail about its own Medicaid experience.[11]

### 4. Alleged Misreading of PHW's Application

PHW alleges the Department misread PHW's application and the Secretary failed to recognize the consequent lack of record support for the

---

[11] In addition, PHW offers no explanation of how the size or expertise of its parent corporation translates to specific experience of PHW, a corporation that was not formed until 2015, has not held a HealthChoices Program contract, and has held a similar CHC Program contract only since 2018. Moreover, PHW offers no explanation of how its parent's experience described "experience with programs similar in scope, size and complexity to the [] HealthChoices Program" or "work done by the individuals who will be assigned to the [z]one as well as that of [PHW]." *See* RR 149a (RFA at 23 § III-4.B). If there are portions of PHW's application that it believes provided this information, it has not cited them in its brief.

We observe further that even if the Department had erred in designating the two weaknesses challenged by PHW, the record does not suggest that ignoring those two listed weaknesses would have had any effect on PHW's overall application score or its non-selection by the Department.

16

Department's evaluation.[12]  Br. of Pet'r at 46.  PHW relies on the Department's debriefing document, which assessed a weakness in PHW's application because PHW's Quality Management Director would spend only 45% of his time on quality management-related activities.  *See* RR 2235a.  PHW insists this is a misreading of its application and its Quality Management Director would actually spend 100% of his time on quality management activities.  Br. of Pet'r at 46.  The Secretary concluded this alleged 100% allocation of the Quality Management Director's time was "not evident" from PHW's application.  Final Determination 1 at 20.  We agree.

PHW's application provided a chart showing estimated time allocation averages for its executive personnel.  *See* RR 2288a.  That chart expressly indicated the estimated time allocation of the Quality Management Director was 10% program management, 0% financial management, *45% quality management*, 15% utilization management, 10% data management, 10% consumer services, and 10% provider utilization.  *Id.*  PHW offers no explanation in its brief how this stated allocation constitutes 100% quality management.  We agree with the Secretary that PHW's application did not make evident any allocation of time other than that set forth in its application and cited in its brief.  To the extent that PHW's submissions to the Secretary, which are not cited in its brief before this Court, may have included a further explanation why it considered categories other than quality management to be quality management-related, we also agree with the Secretary that "PHW's belated explanation does not render the Department's evaluation erroneous."  Final Determination 1 at 20.

---

[12] PHW lists these alleged errors (as well as arguments in other parts of its brief) in what appear to be lengthy indented block quotes, but there are no citations of the putative quotes' origins.  *See, e.g.*, Br. of Pet'r at 45-46.  The indents appear to be formatting errors.  Therefore, in analyzing the alleged errors referenced here, we assume PHW intended the internal citations contained in the indented material to indicate the sources of the material in the text.

## C. Communications with Applicants

When a Commonwealth purchasing agency "fail[s] to abide by the terms of its own RFP, it lack[s] discretion to award a contract contrary to those terms, thus warranting judicial intervention." *Seda-Cog Joint Rail Auth. v. Carload Express, Inc.*, 185 A.3d 1232, 1240 (Pa. Cmwlth. 2018), *aff'd*, 238 A.3d 1225 (Pa. 2020) (citing *Am. Totalisator Co. v. Seligman*, 414 A.2d 1037, 1041 (Pa. 1980)). PHW asserts that the Department engaged in improper communications with other MCOs, in violation of the RFA and Section 513(f) of the Procurement Code, 62 Pa. C.S. § 513(f). The RFA specifically provides that all communications with applicants will be through the Department's designated Issuing Officer. RR 127a, 132a & 139a (RFA at 1, 6 & 13 §§ I-2, I-6 & I-20). PHW alleges that other Department personnel met with another applicant, UnitedHealthcare of Pennsylvania, Inc. (United), on May 6, 2020, and informed United that the Department was dropping its prior readiness review process and allowing applicants to self-attest to their readiness to perform under contracts with the Department. The Secretary, however, found PHW did not prove the Department had such communication with United. PHW contends this finding was improper in light of United's statement alleging such communication, as well as the presence of the topic on the meeting's agenda. PHW also points out that the Department emailed United on June 8, 2020, to schedule a meeting concerning "regional collaborations," which PHW infers is a reference to a "regional council" idea United presented in its application; thus, Aetna reasons the email was an attempt to clarify United's application with regard to how it would implement the "regional council" idea. Pet. for Review at 18-19, ¶¶ 85-87. This argument is without merit.

Contrary to PHW's argument, the Secretary's rejection of this assertion was not arbitrary, capricious, contrary to law, or an abuse of discretion. The May 6, 2020, meeting agenda listed no discussion of the RFA readiness review process or any other subject related to the RFA. *See* RR 1980a-81a. Rather, as the Secretary correctly found, the agenda items facially related only to current contract management issues. *Id.*; *see also* Final Determination 1 at 10. The Secretary was not required to credit United's bare averment that the readiness review process was discussed.

Regarding the Department's email of June 8, 2020, requesting a meeting concerning "regional collaborations," the Secretary also determined that the email referred to collaborations to be pursued under current contracts, explaining that such collaborations preexisted the RFA. Final Determination 1 at 10-11. Moreover, the RFA expressly provided:

> All materials submitted with the application shall be considered the property of the Commonwealth . . . . The Commonwealth has the right to use any or all ideas not protected by intellectual property rights that are presented in any application regardless of whether the application becomes part of an agreement.

RR 138a (RFA at 12 § I-17.B). The Department was free to use United's regional council idea in the course of current contract management.

The Secretary also rejected PHW's reliance on documents obtained from the Department through a request under the Right-to-Know Law,[13] which stated that currently-contracted MCOs that also submitted applications under the RFA "ha[d] contact with the [D]epartment in various ways in regard to various programs." Final Determination 1 at 11 (internal quotation marks omitted). The Secretary

---

[13] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

19

concluded this statement did not establish that the Department engaged in any improper communications concerning the RFA:

> The Department was not prohibited from having contact with MCOs with which it has current contracts for the HealthChoices . . . Program, or any other program, as the response references the Department's communication with various program offices and multiple different programs. This is insufficient to meet PHW's burden of demonstrating that the Department had correspondence with applicants regarding the RFA . . . .

*Id.* We again agree with the Secretary's reasoning. The Secretary did not err in concluding that PHW failed to demonstrate any improper communications by the Department.

### D. Self-Attestations of Readiness

PHW also suggests that the Department violated the RFA by refraining from its traditional readiness review in favor of allowing self-attestations of readiness from applicants. PHW also avers that the Department made this alleged change in order to favor Geisinger Health Plan, Inc. (Geisinger), which was allegedly unprepared for the traditional readiness review. *See* Final Determination 1 at 12.

The Secretary found PHW did not establish that the Department had actually stopped using its traditional readiness review. Final Determination 1 at 12. PHW relied on an averment by United that the Department had told United it was considering a change in the method of readiness review. *Id.* The Secretary did not err in finding that equivocal, second-hand statement inadequate to demonstrate that the Department actually implemented such a change. Likewise, the Secretary could reasonably conclude that a 2016 email, three years before the RFA was issued,

20

stating the change would assist unprepared MCOs, failed to indicate any intent to assist Geisinger regarding the RFA three years later. *See id.*

In addition, we observe that the RFA did not specify what type of readiness review the Department would use. *See* RR 139a-40a (RFA at 13-14, § I-21). Therefore, even assuming the Department did change its method of readiness review, such a change would not have violated the RFA. The Secretary properly rejected PHW's argument concerning the Department's alleged use of self-attestations for readiness review.

### E. Request for Additional Documents

In its alternative request for relief, PHW asks us to remand this matter to the Department with directives to vacate the Final Determination, provide requested documents to PHW, and then either allow PHW to supplement its bid protests or provide PHW with a full evidentiary hearing. However, nothing in the Procurement Code entitles a bid protestant to obtain documents from the Department. *UnitedHealthcare of Pa., Inc. v. Dep't of Hum. Servs.*, 172 A.3d 98, 105 (Pa. Cmwlth. 2017) ("The Procurement Code does not provide protestants a right to production of documents or other discovery."); *see also JPay, Inc. v. Dep't of Corr.*, 89 A.3d 756, 762 (Pa. Cmwlth. 2014) (Section 1711.1(d) of the Procurement Code "does not . . . provide a protestant with an opportunity to discover documents but rather only provides that the contracting officer may submit a response to the protest and documents to support the response"; moreover, the agency is not required to provide the protestant with any of the documents discussed in the response). Accordingly, we reject PHW's alternative request.

## IV. Conclusion

Based on the foregoing discussion, we affirm the Secretary's Final Determination.

_____
CHRISTINE FIZZANO CANNON, Judge

Judges Cohn Jubelirer, Leavitt, and Crompton did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Health and
Wellness, Inc.,                     :
                Petitioner          :
                                    :
        v.                          :
                                    :
Department of Human Services,       :    Nos. 1107 C.D. 2020 & 2 C.D. 2021
                Respondent          :

O R D E R

AND NOW, this 17th day of November, 2021, the Final Determinations of the Secretary of the Pennsylvania Department of Human Services are AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge