J-A23007-23
J-A23008-23
J-A23009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATHRINE ANN DETWILER | : | |
| | : | |
| Appellant | : | No. 390 MDA 2023 |

Appeal from the Judgment of Sentence Entered February 23, 2023
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-CR-0000015-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY ROBERT KRUM | : | |
| | : | |
| Appellant | : | No. 391 MDA 2023 |

Appeal from the Judgment of Sentence Entered February 23, 2023
In the Court of Common Pleas of Columbia County Criminal Division
at No(s): CP-19-CR-0000016-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELAINE M. BARNHART | : | |
| | : | |
| Appellant | : | No. 392 MDA 2023 |

J-A23007-23
J-A23008-23
J-A23009-23

Appeal from the Judgment of Sentence Entered February 23, 2023
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-CR-0000092-2022

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM PER CURIAM:                                  **FILED: JANUARY 4, 2024**

Kathrine Ann Detwiler, Gary Robert Krum, and Elaine M. Barnhart (collectively, Appellants) appeal from their judgments of sentence,[1] entered in the Court of Common Pleas of Columbia County, following their convictions of one count each of defiant trespass.[2] After careful review, we affirm Appellants' judgments of sentence, and we vacate the stays of sentence.[3]

On September 13, 2021, Detwiler, Krum, and Barnhart attended an advertised scheduled public meeting of the Southern Columbia School Board, at the Southern Columbia High School library. *See* N.T. Jury Trial, 1/13/23, at 65, 67. The public meeting was scheduled to begin at 7:00 p.m., and an

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Detwiler, Krum, and Barnhart were charged based upon the same factual scenario, proceeded to a consolidated jury trial, were represented by the same counsel, and now raise the same issues on appeal. Additionally, counsel for Appellants has filed nearly identical briefs at each docket. Accordingly, we consolidate these appeals *sua sponte*. *See* Pa.R.A.P. 513 ("[W]here the same question is involved in two or more appeals in different cases, [this Court] may . . . order them to be argued together in all particulars as if but a single appeal.").

[2] 18 Pa.C.S.A. § 3503(b)(1)(v).

[3] On March 20, 2023, the Appellants filed, with this Court, applications for stay of sentence at each of the above-captioned dockets. On April 13, 2023, this Court entered orders at each of the above-captioned dockets granting each application and staying each Appellant's sentence. *See* Order, 4/13/23, at 1.

- 2 -

executive session was scheduled to take place after the public meeting. *Id.* At an August 29, 2021 school board meeting, the Southern Columbia School District adopted a mask mandate that was still in effect at the time of the public meeting Appellants attended in September 2021.[4] *Id.* at 63-64.

Superintendent Becker testified that the public meeting was to be recorded and streamed over the internet, as well as be open to all members of the public so long as they comported with the school board rules. *Id.* at 65-66. Superintendent Becker further stated that an executive session is typically "closed doors," and addresses more private functions such as student discipline, pending litigations, and personnel matters. *Id.* at 66.

On September 13, 2021, the date of the scheduled meeting, Detwiler, Krum, and Barnhart, as well as two other individuals, arrived not wearing masks. *Id.* at 67, 112. Becker and School Security Officer David Townsend were present to greet people as they arrived. *Id.* at 68, 112. School Officer Townsend had extra masks to provide to people who did not have a mask with them. *Id.* at 68, 113. As the group of five approached the library, they

---

[4] James A. Becker, the superintendent at Southern Columbia, testified that on August 29, 2021, he met with the school board. *Id.* at 59-60. At the August 29, 2021 meeting, the school board adopted the mask mandate pursuant to the American Rescue Plan Act of 2021 (ARP) PL 117-2, Section 2001(i)(1), and the Center for Disease Control's recommendations. *See* N.T. Jury Trial, 1/13/23, at 59-63; *see also* ARP PL 117-2 § 2001(i)(1) ("A local educational agency receiving funds under this section shall develop and make publicly available on the local educational agency's website, not later than 30 days after receiving the allocation of funds described in paragraph (d)(1), a plan for the safe return to in-person instruction and continuity of services."). The mask mandate was effective immediately. *Id.*

engaged in a discussion with School Officer Townsend, who advised them that they had to be masked in order to stay for the public meeting. *Id.* at 68-69, 114. The members of the group refused to put on masks.[5] *Id.* at 69, 114. School Officer Townsend again informed the group that they had to wear a mask or leave. *Id.* at 68-70, 113-15. Again, the Appellants refused either by stating so outright, or failing to put on a mask. *Id.* at 115. School Officer Townsend informed them that if they refused to mask, and refused to leave, he would need to call the police. *Id.* The Appellants, undeterred, continued their refusal to mask and refused to leave. *Id.*; *see also id.* at 138-39 (School Officer Townsend testifying that, throughout evening, Krum stated he would not wear a mask, while Detwiler and Barnhart did not specifically state they would not wear a mask, but refused through their actions).

Superintendent Becker joined the conversation and told the group that they had to either put on masks or leave the premises. *Id.* at 70. He further advised the group that the school board had a mask mandate in effect. *Id.* He did not individually address any of the Appellants, but rather addressed all of them as a group. *Id.*; *see also id.* at 58 (Commonwealth stipulating Appellants were not individually advised to wear masks). Still, Detwiler, Krum, and Barnhart refused to put on a mask and refused to leave. *Id.* at 71. Ultimately, School Officer Townsend called the police. *Id.* at 115

---

[5] Initially, the two unidentified individuals also refused to wear masks. *Id.* at 69. However, one of them ultimately put on a mask, and the other left the building. *Id.*; *see also id.* at 71.

- 4 -

As a result, Superintendent Becker and the rest of the school board decided to conduct the executive session first. *Id.* In part, the school board hoped that the Appellants would either put on a mask or leave during the executive session; additionally, the school board discussed how to handle the situation. *Id.* at 71-73. While the executive session was conducted, Superintendent Becker advised that all members of the public should wait in the cafeteria, which was next door to the library. *Id.*

School Officer Townsend remained in the cafeteria with the members of the public until the conclusion of the executive session. *Id.* at 117. During this time, Officer Donald Spotts of the Locust Township Police Department[6] responded to School Officer Townsend's call.[7] *Id.* at 115-16. Officer Spotts spoke with Krum, Detwiler, and Barnhart, as well as the other members of the public. *Id.* at 146-51. Officer Spotts informed the maskless individuals that the school had asked them to leave. *Id.* The Appellants still did not leave or put on a mask. Officer Spotts ultimately left the school in order to discuss the situation with the District Attorney. *Id.* at 131, 153-55.

Shortly after Officer Spotts left, School Officer Townsend continued talking to everyone in the cafeteria. *Id.* at 117-19. During this time, School

---

[6] We note that the school in question is located in Franklin Township; however, per a municipal agreement, the Locust Township Police Department provides police services to the school. *See id.* at 146.

[7] Officer Spotts wore a body cam, which recorded his interactions and was preserved and presented at trial. *See id.* at 101, 116 (wherein Officer Spotts' body cam footage was presented as multiple separate exhibits, and played multiple times).

Officer Townsend informed them that refusing to comply with the mask mandate is not a "traffic citation," but rather a misdemeanor offense for defiant trespass. *Id.* at 118-19. Still, the Appellants refused to comply or leave. *Id.* Shortly thereafter, another unidentified member of the public asked the Appellants to leave because there was a concern that the school board would cancel the public meeting due to their actions. *Id.* A couple of minutes later, the Appellants left. *Id.* School Officer Townsend testified that the entire series of events occurred over the span of approximately 41 minutes. *Id.* at 119. Ultimately, the public meeting occurred later that evening, after the Appellants had left. *Id.* at 74.

Officer Spotts re-entered the school, and informed School Officer Townsend that the DA was not planning to file charges since the Appellants had already left the school. *Id.* at 154 (Officer Spotts reading police report). School Officer Townsend indicated that he would inform Superintendent Becker. *Id.* Subsequent to this event, the school board reached out the DA and informed him that the school board wished to press charges. *Id.* at 155-56.

On November 8, 2021, the Appellants were charged with one count each of defiant trespass. On April 1, 2022, the Appellants filed a joint petition for *habeas corpus* relief. On June 17, 2022, the trial court conducted a hearing, after which it denied Appellants' *habeas corpus* petition. On January 13, 2023, the Appellants proceeded to a consolidated jury trial, after which they were

convicted as charged. The trial court deferred sentencing and ordered the preparation of pre-sentence investigation reports.

On February 23, 2023, the trial court conducted a sentencing hearing and sentenced each Appellant to 12 months' probation for their respective convictions of defiant trespass. Additionally, the trial court imposed, upon each Appellant, a $1,000 fine, and ordered them to pay the costs of prosecution, and to complete 50 hours of community service.

The Appellants did not file post-sentence motions. The Appellants filed timely notices of appeal and court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal. The Appellants now raise the following issues for our review:

[1.] Whether the trial court erred when it failed to dismiss the charge of defiant trespass . . . at the close of the Commonwealth's case given that the Commonwealth stipulated that no actual communication was given to the Appellant[s] to leave school grounds by a school, center or program official, employee or agent or law enforcement officer?

[2.] Whether the Commonwealth failed to establish all the elements for defiant trespass . . . beyond a reasonable doubt given that the Commonwealth stipulated that no actual communication was given to the Appellant[s] to leave school grounds by a school, center or program official, employee or agent or law enforcement officer?

[3.] Whether the trial court erred in instructing the jury that the Southern Columbia Area School District possessed the legal authority to require students and visitors to wear face masks where no statutory or regulatory authority exists that confers to school districts the power or authority to force students and visitors to wear face masks?

- 7 -

[4.] Where no statute or regulation authorizes public school districts to force students and visitors to wear masks, did the trial court err in instructing the jury that Southern Columbia Area School District had the authority to force students and visitors to wear face masks?

[5.] Whether the trial court erred when it failed to allow counsel for the Appellant[s] to present evidence of the school officials['] violation of Federal law, 21 U.S.C. § 360bbb-3, which required them to provide informed consent to the Appellant[s] in order to require them to wear a face mask which school officials testified was the reason that the school officials wanted the Appellant[s] to leave the school premises on September 13, 2021.

[6.] Whether the trial court erred when it sustained the Commonwealth's objection to the witness being questioned about the failure to provide informed consent in violation of 21 U.S.C. § 360bbb-3 relating to the use of Emergency Use Authorized only devices such as face masks?

Briefs for Appellants, at 7-9.

We address Appellants' first two issues together, as they are related. In their first issue, Appellants argue that the trial court erred in failing to grant their motion for acquittal at the close of the Commonwealth's evidence. *See* Briefs for Appellants, at 25-28. Appellants contend that the Commonwealth failed to satisfy any of the elements of the crime of defiant trespass. *Id.*

In their second issue, Appellants argue that Superintendent Becker and School Officer Townsend's statements to "wear a mask or leave" did not constitute "communications" to leave school grounds. *Id.* at 29-34. Appellants acknowledge that "[t]here is no question that the [Appellants] heard [School] Officer Townsend and Superintendent Becker making the statements about masking or leaving." *Id.* at 35. However, Appellants argue that "either or" statements are not "actual communications" as they are not

"clear, definitive, and understood by the recipient of the communication." *Id.* at 35-37. Appellants assert that it was reasonable for them to think they could wait for further directions. *Id.* at 36-41. Appellants posit that there was no evidence presented to the jury that they were asked to leave. *Id.* at 41-42.

Our standard of review is as follows:

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial[,] in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567 (Pa. Super. 2017) (citation omitted).

The Crimes Code defines criminal trespass, in relevant part, as follows:

**§ 3503. Criminal Trespass**

* * *

- 9 -

**(b) Defiant trespasser.--**

(1) **A person commits an offense if**, knowing that he is not licensed or privileged to do so, **he** enters or **remains in any place as to which notice against trespass is given by**:

* * *

(v) **an actual communication to the actor to leave school grounds** as communicated by a school, center or program official, employee or agent or a law enforcement officer[.]

18 Pa.C.S.A. § 3503(b)(1)(v) (emphasis added).

Appellants' first and second claims are belied by the record. As we summarized above, it is clear the Commonwealth stipulated the Appellants were not **individually** warned to wear a mask or leave. *See* N.T. Jury Trial, 1/13/23, at 58. However, the stipulation indicates that Appellants were warned as a group. *See id.* It is equally clear from trial testimony that the Appellants, along with two other individuals, were warned **as a group** about the school board policy to put on a mask or leave the premises. *See id.* at 68-70, 83-84, 113-15, 118-19, 138-39, 146-51. To the extent that Appellants argue these communications were unclear, we point out that these communications were clear enough to the two unnamed individuals, as they each either put on a mask or left the school in response to the communications.[8] *See id.* at 71; *see also* 115 (School Officer Townsend

_____

[8] It is unclear to this Court how an "either or" statement fails to satisfy the requirements of section 3503, or how an "either or" statement is unclear. *See*
*(Footnote Continued Next Page)*

testifying unidentified female put on mask; unidentified male left school premises). Moreover, almost the entire sequence of events was caught either on surveillance video or on Officer Spotts' body cam, or both. *See id.* at 86-88 (Superintendent Becker testifying high school surveillance video accurately depicted events). These videos, combined with the accompanying testimony from Superintendent Becker, School Officer Townsend, Officer Spotts, and Krum, all reveal that the Appellants were informed numerous times that they had to either put on a mask, or leave the school. *See id.*; *see also id.* at 101, 116 (Officer Spotts body cam being played at trial); Trial Court Opinion, 4/24/23, at 1, 6.

For the same reasons, we are unpersuaded by Appellants' arguments that they cannot be found guilty of defiant trespass because they were not **individually** informed of the mask mandate. *See* Briefs for Appellants, at 35, 41-42. The language of section 3503 does not require each "actor" be separately and personally given notice to leave. *See* 1 Pa.C.S.A. § 1902 ("The singular shall include the plural, and the plural, the singular. Words used in the masculine gender shall include the feminine and neuter."). Taking the evidence as a whole, and including the fact that Appellants conceded that they

---

Briefs for Appellants, at 35-37. As noted, the record before us clearly reflects that the two options presented to the Appellants were (1) put on a mask in accordance with the mask mandate; or (2) leave the school. *See* N.T. Jury Trial, 1/13/23, at 68-70, 83-84, 113-15, 118-19, 138-39, 146-51; *id.* at 106 (Superintendent Becker testifying that if Appellants had put on a mask, they would have been allowed to stay); *see also* Trial Court Opinion, 4/24/23, at 1, 6. Because Appellants elected not to put on a mask, they only had one option remaining, to leave the school premises.

were informed as a group and were all aware of the mask mandate, Appellants' first two claims fail and they are afforded no relief.

We address Appellants' third and fourth claims together as they are related. In their third and fourth claims, which Appellants raise together in their argument sections, Appellants argue that the trial court erred in issuing a jury instruction that the Southern Columbia Area School District had the authority to issue a mask mandate. *See* Briefs for Appellants, at 43-58. Appellants assert that the trial court's instruction was an inaccurate statement of law because the school board expressly lacked the authority to issue a mask mandate pursuant to *Corman v. Acting Secretary of Pennsylvania Department of Health*, 266 A.3d 452 (Pa. 2021). *See* Briefs for Appellants, at 48-58.

Pennsylvania courts are generally afforded "broad discretion in phrasing [jury] instructions, and may choose [their] own wording so long as the law is clearly adequately and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of law is there reversible error." *Commonwealth v. Antidormi*, 84 A.3d 738, 754 (Pa. Super. 2014).

> The trial judge gave the following jury instruction on mask mandates:
>
> There's another swirling issue and that is the power of school boards, what powers do school boards have. I'm telling you the law on this. . . .
>
> The legislature has delegated to the board of directors of any school district the power to permit use on the school grounds and buildings for certain proper purposes under such rules and

regulations as the board may adopt. The mask mandate adopted by the Southern Columbia Area school board on August 29, 2021, was a lawful exercise of that authority **at that time and continuing through into September 13, 2021**.

N.T. Jury Trial, 1/13/23, at 227-28 (emphasis added).

With regard to Appellants' third and fourth claims, we rely upon and adopt the trial court's thorough and well-written opinion.[9] **See** Trial Court Opinion, 4/24/23, at 11-17. In so doing, we emphasize the trial court's following analysis:

[T]his court is not a "super school board" which exists to second[-]guess rules and regulations promulgated by school boards. As in [**Duffield v. School Dist.**, 29 A. 742 (Pa. 1894)] and [**Jacobson v. Massachusetts**, 197 U.S. 11 (1905)], where the courts noted that vaccinations may or may not have prevented smallpox, we can accept for purposes of this argument that masks may or may not mitigate the spread of COVID-19. We are not taking a position on that in this [o]pinion. As stated in **Duffield**, we are not adjudicating whether the wearing o[f] masks [is] "absolutely right or not." . . . [A]gain to quote **Duffield**, we are to determine whether the [m]ask [m]andate was "reasonable in view of the [then-]present state of medical knowledge and the concurring opinions of the various boards and officers charged with the care of the public health." **Duffield**, 29 A. at 743. More specifically, we find that **one** reasonable interpretation of the science at the time was that masks inhibit the spread of COVID-19, especially in view of the CDC Guidelines in effect at the adoption of the [m]ask [m]andate[, (Commonwealth Exhibit 2),] which expressed one scientific school of thought. . . . [T]he [school b]oard is the entity vested with broad discretion to make these policy decisions. . . .

---

[9] Briefly, we note that in **Corman**, our Supreme Court declared the "Order of the Acting Secretary of the Pennsylvania Department of Health Directing Face Coverings in School Entities," issued on September 9, 2021, (DoH Order) void *ab initio*. **See Corman**, **supra**. However, as we noted **supra**, the Southern Columbia Area school board enacted its mask mandate nine days **before** the DoH Order was issued. Further, the school board relied not upon the DoH Order, as the Appellants seem to suggest, but upon the CDC's recommendations and the ARP. **See supra**, at n.3.

> It is not the function of this court to second-guess policies of the [school b]oard.

*Id.* at 15-16 (emphasis in original).

The trial court, having so found, was well within **its discretion** to issue the jury instruction that the school board was within its authority to promulgate rules for Southern Columbia Area School District. ***See id.*** at 11-17; ***see also Antidormi***, ***supra***. Accordingly, Appellants' are afforded no relief on these claims.[10]

In their fifth and sixth claims, which we address together, Appellants argue that the trial court erred in prohibiting evidence regarding the Emergency Use Authorization (EUA) of masks pursuant to Federal Food Drug and Cosmetic Act, particularly to 21 U.S.C. § 360bbb-3. **See** Briefs for Appellants, at 60-67. Appellants assert that under section 360bbb-3, a mask is a "product" and that administration of that "product," even by a supermarket chain or, in this case, a school board, requires that the distributor inform the intended wearers of masks of the benefits and risks of wearing

---

[10] In so deciding, we are cognizant that this Court is expressly prohibited from being a "super school board." ***See Regan, et al, v. Stoddard, et al***, 65 A.2d 240, 242 (Pa. 1949) ("a court is not a super Board of directors"); ***Detweiler v. School Dist. Of Borough of Hatfield***, 104 A.2d 110 (Pa. 1954) (courts should not interfere with policy decisions of school authorities so long as they act in good faith within their statutory powers); ***see also Zebra v. School Dist. Of the City of Pittsburgh***, 296 A.2d 748, 750 (Pa. 1972) ("It is only when the board transcends the limits of its legal discretion that it is amenable to the injunctive processes of a court of equity."). Furthermore, we reiterate to the parties that this Court's review is whether the trial court erred, not whether the school board's policies exceeded the bounds of its legislative authority.

masks. *See* Briefs for Appellants, at 60-67. Appellants contend that absent this "informed consent," the school board acted outside the bounds of federal law. *Id.* at 65-67.

Preliminarily, we rely upon and adopt the trial court's analysis on these issues as well. *See* Trial Court Opinion, 4/24/23, at 17-20. Moreover, it is unclear from Appellants' argument how this evidence is relevant to whether they were trespassing. *See Commonwealth v. Collins*, 888 A.2d 564, 57 (Pa. Super. 2005) ("The threshold inquiry with admission of evidence is whether the evidence is relevant."); Pa.R.E. 402 ("Evidence that is not relevant is not admissible."); *see also* N.T. Jury Trial, 1/13/23, at 90-91 (trial court sustaining Commonwealth's objection to this evidence as irrelevant). Appellants cite to no legal authority for their position. Appellants had no legal authority to support these claims at the time of trial, and they do not have any now. Consequently, Appellants are afforded no relief. The parties are directed to attach a copy of the trial court opinion in the event of further proceedings.

Judgments of sentence affirmed.  Stay of sentence vacated.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/4/2024

COMMONWEALTH OF PENNSYLVANIA,

vs.

KATHERINE ANN DETWILER,
Defendant

:IN THE COURT OF COMMON PLEAS
:OF THE 26TH JUDICIAL DISTRICT
:COLUMBIA COUNTY BRANCH, PA
:CRIMINAL DIVISION
:
:NO. 15-CR-2022


COMMONWEALTH OF PENNSYLVANIA,

vs.

GARY ROBERT KRUM,
Defendant

:IN THE COURT OF COMMON PLEAS
:OF THE 26TH JUDICIAL DISTRICT
:COLUMBIA COUNTY BRANCH, PA
:CRIMINAL DIVISION
:
:NO. 16-CR-2022


COMMONWEALTH OF PENNSYLVANIA,

vs.

ELAINE M. BARNHART,
Defendant

:IN THE COURT OF COMMON PLEAS
:OF THE 26TH JUDICIAL DISTRICT
:COLUMBIA COUNTY BRANCH, PA
:CRIMINAL DIVISION
:
:NO. 92-CR-2022


APPEARANCES:
Thomas E. Leipold, Esq., on behalf of the Commonwealth ~ Via Prison Box
Gregory A. Stapp, Esq., Attorney for the Defendants — Via 1st Class U.S. Mail


April 24, 2023            Norton, P.J.

## OPINION PER PA.R.A.P. 1925

These consolidated cases arise from an episode which occurred on September 13, 2021 on the grounds of Southern Columbia Area School District ("Southern") beginning around 7:00 p.m. On that date and time, a Southern school board (the "Board") meeting had been properly advertised and was scheduled to occur in a school library. The Defendants were told multiple times that they were required to wear a mask or leave pursuant to Board policy. The Defendants did not leave until about 41 minutes passed and only after a municipal police officer was summoned to the school.

The Defendants were each charged with one count of Defiant Trespass (M-1) under §3503(b)(1)(v) of the Crimes Code:

§ 3503. Criminal trespass....

(b) Defiant trespasser.

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: ...

(v) an actual communication to the actor to leave school grounds as communicated by a school, center or program official, employee or agent or a law enforcement officer....

18 Pa.C.S. § 3503(b)(1)(v). The relevant section also provides this defense:

(c) Defenses. — It is a defense to prosecution under this section that: ...

(2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises....

18 Pa.C.S. § 3503(c)(2). Of note, considering the first two of the Defendants' assignments of error, is that nowhere in the statute does it say that an "actual communication" must occur by segregating the Defendant away from all other people to effect a one-on-one communication. After a jury trial on January 13, 2023, each of the Defendants were convicted of the single count of Defiant Trespass (M-1) charged against them. Each Defendant was sentence on February 23, 2023 to pay the costs of prosecution, a fine of $1,000.00, to undergo 12 months of probation and to render 50 hours of community service.

On April 1, 2022, the Defendants filed a Petition for Writ of Habeas Corpus in each of the three (3) above captioned cases, all of which have been consolidated. The

2

issue at a hearing on a Petition for Writ of Habeas Corpus is whether the Commonwealth can prove a prima facie case. To meet this burden, the Commonwealth must present some evidence, which, if believed, would satisfy the elements of the crime charged:

> A prima facie case consists of evidence showing the existence of each material element of the charged offense(s) and probable cause to believe the defendant committed the crime(s) such that, if the evidence were presented at trial, the court would be warranted in submitting the case to the factfinder. Commonwealth v. Landis, 2012 PA Super 132, 48 A.3d 432, 444 (Pa. Super. 2012). If a defendant wishes to challenge the sufficiency of the evidence that was adduced during a preliminary hearing, the defendant may file a pretrial petition for a writ of habeas corpus in Common Pleas Court. Id. The Commonwealth's duty at the habeas stage is, once again, to present a prima facie case. Id.

Commonwealth v. Claffey, 2013 PA Super 155, 80 A.3d 780, 788 (2013). In passing upon that burden, the courts must accept all facts in a light most favorable to the Commonwealth. Commonwealth v. Hendricks, 2007 PA Super 187, 927 A.2d 289, 291 (2007). The same standard is applied upon a defense demurrer or a motion for judgment of acquittal at the close of the Commonwealth's case in chief, which is the subject of the Defendants' first assignment of error.

The first Commonwealth witness at trial was Southern Superintendent, James Becker. Mr. Becker testified that the Board adopted a Health and Safety Plan (Ex. C-1) on August 29, 2021 (the "Health Plan"). The Health Plan was mandated by the federal American Rescue Plan Act §2001(i)(1) (Public Law 117-2, 135 Stat. 4), which required such plans to coordinate resumption of in-person instruction and activities in public schools after COVID-19 related shut-downs. Item 3.a. of the Health Plan adopted by the Board on August 29, 2021 states that Southern requires the "[u]niversal and correct

3

wearing of masks" as one tactic to be employed to resume in person presence at Southern's school buildings. The Health Plan further states: "The District will mandate masking in all buildings for all students, staff, and visitors regardless of vaccination status." Collectively, these masking requirements adopted by the Board in the Health Plan will be referred to as the "Mask Mandate."

The Defendants cite and heavily argued the "Order of the Acting Secretary of the Pennsylvania Department of Health Directing Face Coverings in School Entities" (Ex. D-1, hereafter, the "DoH Order;" herein, "DoH" shall refer to the Pennsylvania Department of Health). On cross examination, Mr. Becker authenticated the DoH Order and it was confirmed that it was issued on September 7, 2021, nine (9) days *after* the Health Plan was approved by the Board. The DoH Order was declared void ab initio by the Pennsylvania Commonwealth Court on November 10, 2021 (Corman v. Acting Sec'y of the Pa. Dep't of Health, 267 A.3d 561, 568, 2021 Pa. Commw. LEXIS 574, *4 (2021)). The Pennsylvania Supreme Court affirmed the Commonwealth Court on December 10, 2021 (Corman v. Acting Secy. of the Pa. Dep't of Health, 2021 Pa. LEXIS 4348, 266 A.3d 452 (2021)). The Supreme Court held that the DoH did not follow the process required for issuance of the DoH Order and, as such, it was invalid and void ab initio. Corman did not adjudicate the prerogative of local school districts to erect protective conditions to the entry to or presence within school buildings such as mask wearing. Since the DoH Order was not in effect when the Mask Mandate was adopted, and given that it is void ab initio, the DoH Order and its masking requirement are inapposite to this case. Also of note is the fact that the Mask Mandate was promulgated under an act of

4

Congress (the American Rescue Plan Act) and not under the rule making authority of the DoH which was determined in Corman to have been inappropriately exercised by the DoH. The jury was instructed on the dates, contents and legal effects (or, as to the DoH Order, the void ab initio effect) of the Health Plan, the DoH Order and the District Attorney's Memorandum dated September 9, 2021 relating to trespassing and mask mandates (Ex. D-9).

Mr. Becker next authenticated Ex. C-2, the CDC mask wearing recommendation of August 12, 2021, issued 17 days before the Mask Mandate was adopted by the Board (the "CDC Guideline"). Mr. Becker confirmed that the CDC Guideline recommended that masks should be worn as one means of protecting against the transmittal of COVID-19 and that the Mask Mandate was drafted not exclusively based upon, but in consideration of, that CDC Guideline. The Health Plan (Ex. C-1) references CDC guidelines and specifically states that "CDC and PA DoH recommendations will be implemented to the extent practicable for mitigation policies in line with the most up to date guidance." (Ex. C-1, p. 5 of 7). It is clear that, on August 29, 2021 and September 13, 2021, the most up to date recommendation from the CDC was for people to wear masks in all indoor public settings.

Mr. Becker testified that a Board meeting was advertised to be held in the school library on September 13, 2021 at 7:00 p.m. The three (3) Defendants and two (2) other persons entered the library without masks along with several other members of the public who did wear masks. Mr. Becker stated that school security Officer David Townsend approached those without masks and told them that there was a school-wide

5

masking policy and that they would need to wear a mask or leave the building. Of the five (5) members of the public who were not wearing masks, one (1) person left, one (1) person put a mask on and the three (3) Defendants did not put on a mask and did not leave. According to Mr. Becker, Officer Townsend told the three (3) Defendants again that they needed to wear a mask or leave the premises. Mr. Becker himself also told the Defendants that they needed to wear a mask or leave. These multiple communications of "mask or leave" were given by Mr. Becker and Officer Townsend to the group of three (3) Defendants, who were together in a group. The Defendants did not "mask or leave" for a period of at least 41 minutes. At trial, the DA stipulated to the same facts to which he stipulated at the Habeas Corpus hearing on June 17, 2022:

> "We would stipulate there was no personal directive given to any or each of the three Defendants individually."

(Hereafter, the "Stipulation").

At trial, the DA brought out evidence from Mr. Becker, Officer David Townsend and township police officer Donald Spotts that the Defendants were present and were collectively and actually told as a group that they were required to put on a mask or leave the premises. The DA argued that the Stipulation only was intended to agree that the Defendants were not individually segregated and individually told, one-by-one, that they had to mask or leave. The defense argued to the jury otherwise. By returning a verdict of guilty, the jury accepted the DA's argument and interpretation that, using the language of the statute, the Defendants were told to leave by "actual communication." The Defendants' first assignment of error states that the "Commonwealth stipulated that no actual communication was given to the Defendant[s] to leave school grounds...."

6

This is a blatantly false statement of the Stipulation which was stated. The Stipulation was as is quoted above.

In response to the brewing issue, and to allow for dealing with the refusal of the Defendants to mask or leave, Mr. Becker testified that he took the Board into executive session, which occurs under Board past practice by excusing all non-Board members from the library to the cafeteria. At that, the public, including the three (3) Defendants, went to the cafeteria. The Defendants were the only persons in the cafeteria without masks. Mr. Becker stated that the executive session lasted approximately 45 minutes. After the executive session was concluded, Mr. Becker invited the public back into the library for the conduct of the public meeting. At that time, about 45 minutes later, the Defendants were not among the members of the public who returned from the cafeteria to the library and they had apparently left by that time.

Officer Townsend, the Commonwealth's second witness, testified that, on September 13, 2021, he was a school security officer at Southern. After September 13, 2021, his job title changed to school police officer. Therefore, Officer Townsend did not have arrest powers on September 13, 2021. Officer Townsend stated that he observed a group of five (5) persons without masks, including the three (3) Defendants herein, enter the school library to attend the Board meeting on September 13, 2021. Officer Townsend testified that he told all five (5) of those persons without masks that they needed to mask or leave the premises. Officer Townsend specifically offered a mask to the Defendant Krum, and, according to Officer Townsend's testimony, Defendant Krum explicitly said: "I will not wear a mask." Of the five (5) persons who were unmasked,

7

one (1) left, one (1) put on a mask and three (3), the Defendants herein, did neither: They stayed inside the school building and did not put on a mask. When Officer Townsend told the three (3) Defendants that he would call the police if they did not mask or leave, Defendant Detwiler told Officer Townsend: "go ahead and call the cops or whomever you need to call," or something to that effect. The various video evidence entered into the record and shown to the jury also clearly shows that someone in the Defendants' group stated, in the cafeteria after the Board went into executive session, that they were engaging in "civil disobedience." Defendant Krum was on video extensively arguing to Officers Townsend and Spotts regarding his "rights" and that the Board did not have the power to impose a "mask or leave" mandate. On the video, Defendant Krum argued: "It's not a law, it's just a mandate."[1] It was clear that Defendant Krum knew that he was required to mask or leave and that moving the group to the cafeteria did not somehow rescinded the "mask or leave" order. Defense counsel argued, and Defendant Krum disingenuously testified, that the Defendants thought that, when the Board went into executive session, the authorities were permitting the Defendants to remain on school premises (in the cafeteria) without masks. The video evidence clearly belies that argument and interpretation, and the jury's verdict illustrates that they did not buy that specious argument and interpretation. Eventually, Officer Townsend did call the municipal police.

Officer Spotts from the Locust Township Police Department arrived about twenty (20) minutes into the episode, according to Officer Townsend's testimony. Officer

---

[1] This court is still trying to figure out the relevance of that thin or non-existent distinction.

8

Townsend met Officer Spotts in front of the school, told Officer Spotts what was going on and the two (2) officers walked into the school together. By that time, the public, including the three (3) Defendants, had been excused from the library to the cafeteria due to the executive session that had been called. Officer Spotts and Officer Townsend went to the cafeteria and again told all three (3) Defendants that they were required to either mask or leave. When told that non-compliance would result in a Defiant Trespass charge, one person in the group of three (3) Defendants said to the effect: "Oh, that's just a traffic citation," to which Officer Townsend told the group of three (3) Defendants to the effect of: "No, it is not just a traffic citation."

This standoff went on from start to finish for a period of about 41 minutes. Officer Townsend testified that the three (3) Defendants did leave after 41 minutes. The Defendants left immediately after another member of the public in the cafeteria complained to them, telling them to mask or leave, because he wanted to get on with and attend the school Board meeting. With that, 41 minutes into the episode and, according to Officer Townsend, about 20 minutes after Officer Spotts arrived, the Defendants left.

To summarize the facts, the evidence would permitted a finding that the Board, on August 29, 2021, promulgated a requirement that all individuals in school buildings, with exceptions not claimed on this record, be masked (the Health Plan, Ex. C-1). The Board relied upon then current CDC Guidelines (Ex. C-2), as explicitly set forth in the Health Plan (Ex. C-1). The CDC Guideline included recommendations that persons wear masks to inhibit the spread of COVID-19. It is clear that the CDC Guideline was a

9

recommendation, but it is equally clear that the Mask Mandate in the Health Plan promulgated by the Board was a requirement. By virtue of its guideline, the CDC, an authoritative scientific body, illustrated its opinion that masking impeded the transmission of COVID to some degree. The Defendants entered the school building without masks and were told collectively by "actual communication" multiple times by Superintendent Becker, Officer Townsend and Officer Spotts to "mask or leave," and they were expressly advised of the school Board policy in that regard. They did not leave immediately, dared the school security officer to call the police, Defendant Krum expressly refused to wear a mask and the three (3) Defendants stayed 41 minutes through the incident and 20 minutes after police Officer Spotts arrived. They only left after a fellow member of the public complained to them and asked them to mask or leave so that everyone could get on with the school board meeting.

In their Concise Statements of Matters Complained of on Appeal, the Defendants assert 6 issues. The will be dealt with in sequence, paraphrasing the issues:

**1. This court erred in failing to grant the defense motion to dismiss at the close of the Commonwealth's case due to the Defendants' claim that the "Commonwealth stipulated that no actual communication was given the Defendant[s] to leave school grounds...."**

This assignment of error is falsely stated. The Stipulation was: "We would stipulate there was no personal directive given to any or each of the three Defendants individually." That is a far cry from stipulating away the Commonwealth's case by saying that no "actual communication" occurred. By rendering its verdict, the jury accepted the Commonwealth's argument that the Defendants were actually and

10

collectively communicated the directive to mask or leave. This was a question for the jury and the jury answered it by rendering their verdict of "guilty."

**2. The second assignment of error is essentially the same as the first and that discussion is hereby incorporated by reference.**

**3. This court erred in instructing the jury that the Southern School Board had the legal authority to require persons on school premises to wear face masks.**

School districts are granted broad general powers to enable them to carry out the provisions of the Pennsylvania School Code, found at 24 P.S. § 1-101 et seq.:

§ 2-211. General powers of districts

The several school districts in this Commonwealth shall be, and hereby are vested as, bodies corporate, with all necessary powers to enable them to carry out the provisions of this act.

24 P.S. § 2-211. These include powers specifically granted by the legislature or by necessary implication. Central Dauphin School District v. American Cas. Co., 271 Pa.Super. 218, 412 A.2d 892 (1979), rev'd. on other grounds, 493 Pa. 254, 426 A.2d 94. A school district's powers are administered by a board of school directors. 24 P.S. § 3-301.

Among the several express and implied powers of a school board is the power to provide for and administer necessary and suitable school buildings. 24 P.S. § 7-701. School boards are vested with broad discretion to adopt "rules and regulations as [they] may deem necessary and proper" as to all functions delegated to them under the School Code, including those as to regulation of presence on school grounds. 24 P.S.

11

§ 5-510, considered in conjunction with § 7-701. The power of a school board to

promulgate rules and regulations regarding school buildings has indeed been delegated

by the legislature, is plenary, and is subject to a broad exercise of discretion:

> The legislature has delegated to the board of school directors of any
> school district the power to permit use of the school grounds and buildings
> for certain proper purposes under such rules and regulations as the board
> may adopt. Judicial review of the actions of a board must be restricted to
> the reasonableness thereof: Regan, et al. v. Stoddard, et al., 361 Pa. 469,
> 65 A. 2d 240; Commonwealth ex rel. v. Sunbury School District, 335 Pa.
> 6, 6 A. 2d 279; Wilson v. School District of Philadelphia, 328 Pa. 225, 195
> A. 90. It cannot encompass consideration of the wisdom of the action
> taken.

McKnight v. Board of Public Education, 365 Pa. 422, 427, 76 A.2d 207, 209-210 (1950).

In Commonwealth v. Hall, 309 Pa. Super. 407, 455 A.2d 674 (1983), this proposition

was repeated in the context of a prosecution of a violation of a mandatory attendance

policy:

> "[W]hen one attacks the action of a school board concerning matters
> committed by law to its discretion, he has a heavy burden as the courts
> are not prone to disturb a school board's decision. Indeed, they are
> without jurisdiction to interfere therewith unless it is apparent that the
> school board's conduct is arbitrary, capricious and to the prejudice of
> public interest. Lack of wisdom or mistaken judgment is insufficient."
> Farris v. Swetts, 158 Pa.Super. 645, 648, 46 A.2d 504, 505 (1946). In
> short, the courts of this Commonwealth are not "super" school boards with
> superior knowledge concerning the administration of the public schools or
> the science of pedagogics. McCoy v. Lincoln Intermediate Unit No. 12, 38
> Pa.Cmwlth. 29, 36, 391 A.2d 1119, 1123 (1978), cert. denied, 441 U.S.
> 923, 99 S.Ct. 2033, 60 L.Ed.2d 397 (1979). See also: Zebra v. Pittsburgh
> School District, 449 Pa. 432, 437, 296 A.2d 748, 750 (1972); Christoffel v.
> Shaler Area School District, 60 Pa.Cmwlth. 17, 20, 430 A.2d 726, 728
> (1981); O'Leary v. Wisecup, 26 Pa.Cmwlth. 538, 364 A.2d 770 (1976).
> "'[C]ourts are in no position to exercise control over schools and
> determine the policy of school administration; the judges ordinarily are not
> equipped for this immense task.'" Balsbaugh, et al. v. Rowland, 447 Pa.
> 423, 431, 290 A.2d 85, 90 (1972) citing Wilson, et ux. v. Philadelphia
> School District, et al., supra 328 Pa. at 236, 195 A. at 97. Therefore, in the

12

absence of a gross abuse of discretion, courts will not second-guess policies of the several boards of school directors. See: Commonwealth ex rel. Hetrick v. Sunbury School District, 335 Pa. 6, 11, 6 A.2d 279, 282 (1939); Hibbs v. Arensberg, 276 Pa. 24, 26, 119 A. 727, 728 (1923).

Hall, 455 A.2d at 676-677.

In Duffield v. School Dist., 162 Pa. 476, 29 A. 742 (1894), the Pennsylvania Supreme Court dealt with a case in which a parent sued a school district in mandamus to compel the school to admit his child who had not been vaccinated against smallpox. The school district had adopted a policy requiring vaccination in order to attend school. Although Duffield was adjudicated 128 years ago, the propositions and principles set forth in its opinion are those which have been carried forward in the present School Code and in the cases set forth above. In leading to its holding that the school district was within its power to condition school attendance upon receiving a smallpox vaccine, the Pennsylvania Supreme Court recognized the distinction between dictating what citizen generally must do and regulating a person's presence within a school building:

> The school board do [sic] not claim that they can compel the plaintiff to vaccinate his son. They claim only the right to exclude from the schools those who do not comply with such regulations of the city and the board of directors as have been thought necessary to preserve the public health.

Duffield, 29 A. at 742. The Duffield court continued:

> Vaccination may be, or may not be, a preventive of smallpox. That is a question about which medical men differ and which the law affords no means of determining in a summary manner. A decided majority of the medical profession believe in its efficacy. The municipal regulations of many, and I have no doubt of most, of the cities of this state and country, provide for it. In the present state of medical knowledge and public opinion upon this subject it would be impossible for a court to deny that there is reason for believing in the importance of vaccination as a means of protection from the scourge of smallpox. The question is not one of science in a case like the present. We are not required to determine

13

judicially whether the public belief in the efficacy of vaccination is absolutely right or not. We are to consider what is reasonable in view of the present state of medical knowledge and the concurring opinions of the various boards and officers charged with the care of the public health.

Duffield, 29 A. at 742-743.

Eleven years later, in Jacobson v. Massachusetts, 197 U.S. 11, 25 S. Ct. 358, 49 L. Ed. 643 (1905), the United States Supreme Court affirmed the power of state and local governments to generally compel all healthy persons to undergo a smallpox vaccination, despite a then ongoing debate as to its efficacy. In so holding, the United States Supreme Court expressly stated that individuals do not have a Constitutional liberty right to refuse such health and safety mandates enacted by state or local legislative bodies:

The authority of the State to enact this statute is to be referred to what is commonly called the police power -- a power which the State did not surrender when becoming a member of the Union under the Constitution. Although this court has refrained from any attempt to define the limits of that power, yet it has distinctly recognized the authority of a State to enact quarantine laws and "health laws of every description;" indeed, all laws that relate to matters completely within its territory and which do not by their necessary operation affect the people of other States. According to settled principles the police power of a State must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety. Gibbons v. Ogden, 9 Wheat. 1, 203; Railroad Company v. Husen, 95 U.S. 465, 470; Beer Company v. Massachusetts, 97 U.S. 25; New Orleans Gas Co. v. Louisiana Light Co., 115 U.S. 650, 661; Lawton v. Steele, 152 U.S. 133. It is equally true that the State may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety. The mode or manner in which those results are to be accomplished is within the discretion of the State, subject, of course, so far as Federal power is concerned, only to the condition that no rule prescribed by a State, nor any regulation adopted by a local governmental agency acting under the sanction of state legislation, shall contravene the Constitution of the United States or infringe any right granted or secured by that instrument.

14

> A local enactment or regulation, even if based on the acknowledged police power of a State, must always yield in case of conflict with the exercise by the General Government of any power it possesses under the Constitution, or with any right which that instrument gives or secures. Gibbons v. Ogden, 9 Wheat. 1, 210; Sinnot v. Davenport, 22 How. 227, 243; Missouri, Kansas & Texas Ry. Co. v. Haber, 169 U.S. 613, 626.
>
> We come, then, to inquire whether any right given, or secured by the Constitution, is invaded by the statute as interpreted by the state court. The defendant insists that his liberty is invaded when the State subjects him to fine or imprisonment for neglecting or refusing to submit to vaccination; that a compulsory vaccination law is unreasonable, arbitrary and oppressive, and, therefore, hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best; and that the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person. But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint.

Jacobson, 197 U.S. at 24-26.

Applying these cases and propositions to the facts of this case, read in a light most favorable to the Commonwealth, the verdict winner, it is apparent that the Board was within its power and prerogative to mandate the wearing of masks inside school buildings, including at public school board meetings inside a school building. To paraphrase the cases, this court is not a "super school board" which exists to second guess rules and regulations promulgated by school boards. As in Duffield and Jacobson, where the courts noted that vaccinations may or may not have prevented smallpox, we can accept for purposes of this argument that masks may or may not mitigate the spread of COVID-19. We are not taking a position on that in this Opinion. As stated in Duffield, we are not adjudicating whether the wearing or masks are "absolutely right or not." Reasonable minds may differ, but, again to quote Duffield, we

15

are to determine whether the Mask Mandate was "reasonable in view of the [then[2]] present state of medical knowledge and the concurring opinions of the various boards and officers charged with the care of the public health." Duffield, 29 A. at 743. More specifically, we find that *one* reasonable interpretation of the science at the time was that masks inhibit the spread of COVID-19, especially in view of the CDC Guidelines in effect at the adoption of the Mask Mandate (Ex. C-2) which expressed one scientific school of thought. There may have been other reasonable interpretations, but the Board is the entity vested with broad discretion to make these policy decisions. As stated in Hall, supra, in the absence of a gross abuse of discretion, it is not the function of this court to second-guess policies of the Board. As confirmed in Jacobson by the United States Supreme Court, the Defendants had no Constitutional right to exercise their liberty interests by being "mask free" inside a school building. There was clearly no abuse of discretion in promulgating the Mask Mandate.

In Duffield, there was no requirement that all children be vaccinated in the abstract, only that, if the children were present in school, then and only then did they have to be vaccinated. In the present case, the Southern Board did not require the Defendant's to don masks generally or in the abstract. Rather, the Board promulgated a policy decision that, if one wanted to be present upon school grounds, he or she had to wear a mask.

---

[2] It is well documented that our country was faced with an unprecedented emergency when faced with the COVID pandemic. It is also well documented that research evolved and is evolving to this day. It is only fair and just to apply the state of the art research and CDC recommendations as they existed on September 13, 2021.

16

**4. The fourth assignment of error is the same at the third: That the Southern Board had no legal authority to require the wearing of masks on school premises. The discussion of the third issue is hereby incorporated by reference.**

**5. This court erred in prohibiting defense counsel from arguing that the Federal Food Drug and Cosmetic Act (the "FDCA") and the Emergency Use Authorization (EUA) provisions within the FDCA, found at 21 U.S.C. §360bbb-3, prohibited the Southern Board from Implementing the Mask Mandate.**

The Defendants next argue that it was error for this court, at trial and as a matter of law, to have prohibited the jury from being read and instructed on a certain part of the Federal Food Drug and Cosmetic Act (the "FDCA"), specifically the Emergency Use Authorization (EUA) statute found at 21 U.S.C. §360bbb-3. At argument, outside the presence of the jury, defense counsel argued that a mask is a "product" under the FDCA and the EUA statute and that, prior to "administration" of that "product," even by a supermarket chain, the supermarket or other distributor must inform the distributees of masks of the benefits and risks of masks. When asked if he had any case citations interpreting the FDCA in the manner argued by him, defense counsel had none to offer. This court determined that such an interpretation was absurd and ruled that no party could present evidence or make argument to the jury relating to the FDCA or the EUA statute.

The EUA statute contained within the FDCA sets forth the statutory guidelines for emergency authorization of "products" (including drugs, devices, and biological products) by the Secretary of Health and Human Services ("the Secretary"). See generally § 360bbb-3(a)(1). The Secretary "**may** make a declaration that the circumstances exist justifying the authorization" for a product on the basis of "a

17

determination by the Secretary that there is a public health emergency . . . that affects, or has a significant potential to affect, national security or the health and security of United States citizens living abroad, and that involves a biological, chemical, radiological, or nuclear agent or agents, or a disease or condition that may be attributable to such agent or agents." § 360bbb-3(b)(1)(C) (Emphasis added). For authorization of a "product" for emergency use, the FDCA requires that, **"to the extent practicable,"** steps be taken to ensure that individuals "on whom the product is administered" are informed "of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." §360bbb-3(e)(1)(A)(ii)(III). (Emphasis added).

In Lloyd v. Sch. Bd. of Palm Beach Cty., 570 F. Supp. 3d 1165 (S.D. Fl. 2021), the history of EUA of masks was traced:

> On February 4, 2020, the Secretary determined there to be a "public health emergency that has a significant potential to affect national security or the health and security of United States citizens living abroad and that involves a novel (new) coronavirus (nCoV) first detected in Wuhan City, Hubei Province, China in 2019 (2019-nCoV)." See Determination of Public Health Emergency, 85 Fed. Reg. 7316-01 (Feb. 7, 2020). Then, based upon the Secretary's determination of a public health emergency, on April 24, 2020, the Secretary issued an Emergency Use Authorization ("Mask EUA") clarifying that facemasks, including cloth face coverings, are "authorized for use by the general public to cover their noses and mouths, in accordance with CDC recommendations." See FOOD AND DRUG ADMINISTRATION, (April 24, 2021), available at: https://www.fda.gov/media/137121/download. **The Mask EUA does not include any provision regarding informed consent.** See generally id. (Emphasis added).

18

Lloyd, 570 F. Supp. 3d at 1174. Given the absence of any provision regarding informed consent, it is apparent that the Secretary felt, as does this court, that apprisal of the much argued risks and benefits of masks was not "practicable" in the literally hundreds of thousands of every day distributions of masks in supermarkets, stores, hospitals and schools.

In Lloyd, with citations to significant precedent, it was held that there is no private cause of action for an alleged violation of the FDCA or EUA promulgated thereunder. Accord: Bush v. Fantasia, 2022 U.S. Dist. LEXIS 163696, 2022 WL 4134501 (D. Mass. 2022). Thus, Defendants in the present case cannot convolute the issues by asserting a claim of a right to be mask free based upon a private assertion of a violation of the FDCA or an EUA. Further, in Lloyd, it was held that a mask mandate presents no substantive due process or equal protection Constitutional violation.

In addition to the above, the court in Lloyd held that a mask mandate by a school district is rationally related to a legitimate governmental interest because it is consistent with the CDC's Guidance, pointing out that, regardless of two divergent scientific schools of thought, "... the School Board's Mask Mandate is consistent with guidance from the CDC." Lloyd, 570 F. Supp. 3d at 1184. The Lloyd court elaborated:

> Although Plaintiffs have raised valid points about the efficacy of masks, the Court cannot find that Defendants are irrational for following the recommendations of the CDC which, as the Court has noted, are formulated based upon a great deal of scientific research.

Lloyd, 570 F. Supp. 3d at 1185. As such, it was held that a "mask mandate" does not constitute any violation of a substantive due process or equal protection right under the Constitution. See also: Bush, supra; Guilfoyle v. Beutner, 2021 U.S. Dist. LEXIS

19

195396 (C.D. Cal. 2021); <u>Dolen-Cartwright v. Alexander</u>, 2022 U.S. Dist. LEXIS 50053 (M.D. La. 2022). The CDC Guidance in the present case (Ex. C-2) was confirmed by Superintendent Becker to have been a basis for Southern's Mask Mandate promulgated on August 29, 2021. As in <u>Lloyd</u>, and as articulated above, as long as there was some rational basis for the Southern School Board policy, we, in the judiciary, are not to act as a "super school board," second guessing board policy and substituting our own.

For the foregoing reasons, the FDCA and the EUA statute contained within it are not relevant or assertable by the Defendants in the present case, each of whom are trying to use the EUA statute as a defense to the crime of defiant trespass. It was proper to prevent the jury from being confused by arguments thereunder.

**6. The sixth assignment of error is the same as the fifth and the discussion on the fifth assignment of error is hereby incorporated by reference.**

BY THE COURT:

_____ P.J.
HONORABLE GARY E. NORTON, P.J.